CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY v. CHICAGO, FT. MADISON & DES MOINES RAILWAY COMPANY, Appellant.

**2 Jurisdiction: Equity: Remedy at Law:** RAILWAY GRADE CROSSING. A court of equity has jurisdiction to prevent a crossing at grade by injunction. The condemnation proceeding authorized by statute (sections 1244, 1245, 1255) can not determine the propriety of allowing the crossing.

**3 Same:** RIGHT TO GRADE CROSSING NOT ABSOLUTE. The statute allows such crossings where they "will not unnecessarily impede the travel, etc., of the railway to be crossed" (sec. 1265). Whether or not the proposed crossing would do this, may be a judicial question.

**4 Evidence:** GRADE CROSSING PROPERLY DENIED.

**1 Practice on Appeal:** WAIVER. One can not maintain an appeal from an order with which he has voluntarily complied.

*Appeal from  Wapello  District  Court.*—HON.  W.  I. BABB, Judge.

MONDAY, MAY 14, 1894.

ACTION in equity for an injunction to restrain the defendant from making certain grade-crossings.   There was a hearing on the merits, and orders from which both parties appeal, the defendant having taken the first appeal.—*Affirmed.*

*Jesse A.  Baldwin,  W. A.  Work,* and  *James H. Anderson* for appellant.

*J. W. Blythe, Thos. Hedge,* and *McNett & Tisdale,* for appellee.

ROBINSON, J.—The plaintiff has for many years owned and operated a railway from Chicago, through the states of Illinois and Iowa, to the Missouri river, and thence westward to Denver.  It passes through Burlington, Batavia, Ottumwa, and other cities, and is one of the main railway lines of this state for the transportation of passengers and freight.   At the time this action was commenced the defendant owned a railway which extended from Ft. Madison, in a north-westerly direction, a distance of fifty-one miles, to Libertyville, and was arranging to extend it to Ottumwa. It proposed to make the extension by constructing a railway across that of plaintiff at a point two miles east of Batavia; thence westward, a distance of about fifteen miles, crossing the railway of plaintiff again in East Ottumwa; and thence, through grounds it had procured for railway purposes, to its depot in the city. Both crossings were to be at grade.   The plaintiff objected to both crossings on the grounds that they were not necessary, and that they would unnecessarily

impede the travel and transportation on its line, caus-
ing it to be burdensome and expensive to the plaintiff,
and less satisfactory to the public, and asks, if defend-
ant is permitted to make crossings at the places speci-
fied, that it be required to construct over or under-
crossings.   The plaintiff also asks that defendant be
enjoined perpetually from making crossings at grade.
In an amendment to its petition the plaintiff alleges
that an under-crossing in East Ottumwa would be more
beneficial to the parties and to the public than an over-
crossing, and offers, if the under-crossing is found to
be more expensive than the over-crossing, to pay the
difference in cost, and, for the purposes of the case,
admits the jurisdiction of the court to make an equit-
able apportionment between the parties of the expense
of an under-crossing.   The defendant alleges that a
court of equity has no jurisdiction of the subject-mat-
ter of the action, for the reason that the issues are
triable at law, in a proceeding to secure the right of
way for the crossings.   It denies that the crossings are
not necessary, and insists that it is entitled to make
the crossings at grade.   When this action was com-
menced, defendant had given notice of proceedings to
assess the damages which the taking of the right of way
would cause to plaintiff; and a temporary injunction
was issued to restrain the defendant from attempting
to make grade-crossings, and from acquiring, by con-
demnation proceedings or otherwise, any right of way
for grade-crossings.   Applications were made subse-
quently for further orders, which resulted in a finding
by the court that a grade-crossing at Ottumwa should
be avoided, if it could be done by a reasonable expend-
iture of money, and that an over-crossing was not
practicable.   It was ordered that the injunction, as to
that crossing, should be dissolved, unless the plaintiff
should, within a time fixed, file its written consent
and agreement to grant to defendant a right of way

for an under-crossing at a point designated, and to
raise its grade and tracks at that point to such a height
as to allow the defendant a clear space twenty-one feet
in height for the passage of its trains.   The crossing
was to be constructed by the plaintiff, but the defend-
ant was to pay twenty-five thousand dollars of the cost,
which it was estimated would be forty thousand dol-
lars.   The consent and agreement were filed by plain-
tiff, as required by the order.   It was afterward shown
that a mistake in the surveys had been made, and that
the grade and tracks of plaintiff would have to be
raised, at the crossing, several feet higher than the order
as first made contemplated.   It was therefore modified
to require a clear space of but twenty feet in height for
the tracks of defendant, and the latter was required to
pay two thousand dollars of the additional expenses
found to be necessary to make the crossing.   The
plaintiff afterward constructed the crossing, and the
defendant paid to it, under protest, the twenty-seven
thousand dollars required by the order as modified.

The appeal of the defendant seems to be general,
from all the orders of the district court; but
after the injunction to restrain the acquiring and
making of grade-crossings was granted, the defendant
voluntarily constructed an over-crossing at the point in
controversy, east of Batavia, and the subsequent pro-
ceedings had reference almost wholly to the Ottumwa
crossing.   In view of the facts stated, the defendant
must be held to have waived any right to a grade-cross-
ing at the point east of Batavia, and for that reason its
claim in regard to it will not be further considered.
The plaintiff appeals from so much of the orders of the
court as required the plaintiff to contribute to the
expense necessary to enable the defendant to make
the crossings, and from the failure of the court to
enjoin the defendant from making the crossings.   But
inasmuch as the plaintiff, by a formal pleading,

expressly admitted the jurisdiction of the court, equit-
ably to apportion between the parties the expense of
the under-crossing, and voluntarily consented to the
order of the court which provided that the plaintiff
should make the crossing, to the expense of which the
defendant should contribute twenty-five thousand
dollars, and made no objection to the modification of
the order which provided for changes, and that defend-
ant should pay the further sum of two thousand dol-
lars, and inasmuch as the plaintiff made the changes,
and constructed the crossing, as required by the order,
without objection on its part, it can not be heard to
complain in this court of what has been done.

I.   The defendant contends that it had the abso-
lute right to elect to make such crossings of the
plaintiff's railway as should seem to it proper,
and to have the damages which would be caused
by them ascertained in the manner pointed
out by statute, and that all objections which can be
properly urged to its obtaining the right to construct
such crossings can be presented and determined in the
condemnation proceedings.   That some questions other
than those in regard to the amount of damages to
which the landowners will be entitled can be deter-
mined in such proceedings is true.   *R'y Co. v. Donnell,*
77 Iowa, 223, 42 N. W. Rep. 176.   And it may be said
to be the general rule that where all rights can be
adjudicated, and full relief can be obtained, in the con-
demnation proceedings, a court of equity will not inter-
fere to stay such proceedings.   But that grade-crossings
should not be allowed could not have been determined
by the sheriff's jury.   They were authorized only to
assess the damages which would result in taking the
right of way and making the crossing as proposed by
defendant.   Code, secs. 1244, 1245.   The company
desiring the right of way may pay the damages so

assessed, and take possession of the property condemned, before further proceedings on appeal can be had.   Code, secs. 1244, 1254, 1255.   It is evident that the means afforded by the statute in proceedings at law would not have enabled the plaintiff to protect its property against at least a temporary occupation by the defendant; and, if the crossings defendant sought to construct were of a kind which should not have been permitted, a court of equity had jurisdiction to grant appropriate relief.

II.   The claim of appellant, that its election of the kind of crossing to construct is not a matter for judicial review and control, is not, in our opinion, well founded.   The right of election sought to be enforced in this case is said to be given by section 1265 of the Code, which is as follows:   "Any such corporation may construct and carry its railway across, over, or under any railway, canal, or water course, when it may be necessary in the construction of the same; and in such cases said corporation shall so construct its crossings as not unnecessarily to impede the travel, transportation, or navigation upon the railway, canal, or stream so crossed; said corporation shall be liable for the damages occasioned to any corporation or party injured by reason of said crossing."   This statute gives to a railway corporation the absolute right to carry its railway across, over, or under that of another, when it may be necessary to do so; but the right is subject to the limitation that the crossing shall be so made as not unnecessarily to interfere with the use of the railway crossed.   Where such interference is threatened, it is within the jurisdiction of the proper courts to prevent it.   It can not be said that the right of crossing given by the statute is denied if the corporation desiring the crossing is required so to make it as to avoid unnecessary interference with the transporta-

tion of passengers and freight on the railway sought to be crossed. In this case it is shown that the business of plaintiff carried on over that part of its railway in question is large, involving the running of numerous trains daily; that there are ascending and descending grades in the vicinity of the crossing; and that it would cause great inconvenience and expense to the plaintiff to require it to stop its trains for the crossing. Moreover, the delay incident to such stopping of trains would be to the serious detriment of passengers, and dangers, always incident to grade-crossings, would be incurred. An over-crossing would not have been practicable, and is not contended for by either party. The disadvantages of a grade-crossing are so many and so serious that, in view of the practicability of an under-crossing at a comparatively moderate expense, we think the under-crossing was properly required. See *Humeston & S. R'y Co. v. Chicago, St. P. & K. C. R'y Co.*, 74 Iowa, 554, 38 N. W. Rep. 413.

In reaching the conclusion announced we are not unmindful of the fact that grade-crossings always interfere to some extent with the use of the intersecting tracks, and that over- or under-crossings will be feasible in a great number of cases where grade-crossings are sought; but it does not follow that, in all such cases, grade-crossings should be denied. The difficulty and expense of the over- or under-crossing, and the business to be done on the railway to be crossed, and other relevant facts must be considered, in each case, in determining whether a grade-crossing would unnecessarily impede the travel and transportation on the road to be crossed, within the meaning of the statute. It is our opinion that the orders made by the district court, so far as we are required to review them, were authorized by the evidence and the law, and that they accomplished just results. They are, therefore, AFFIRMED.