WALSH *v.* COLUMBUS, HOCKING VALLEY AND ATHENS RAILROAD COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF OHIO.

No. 90.  Submitted December 18, 1899. — Decided February 26, 1900.

By an act of Congress passed in 1828, a large quantity of land was granted to the State of Ohio for the construction of canals.  The act provided that such canals, " when completed or used, shall be, and forever remain, public highways, for the use of the Government of the United States." The grant was accepted by the State; but in 1894, the state legislature authorized the abandonment of certain canals, which had been constructed under the act of Congress, and the leasing of the same to a railroad company.

Held, that there was reason to claim that the act of 1894 impaired the obligation of the previous contract between the State and the Federal Government, and that a Federal question was thereby raised.

Held, further, that in accepting the Congressional land grant of 1828, there was no undertaking on the part of the State to maintain the canals as such in perpetuity, and that the Government was only entitled to their free use as long as they were kept up as public highways, and that the act of the legislature of Ohio, authorizing their abandonment as canals and leasing them to a railway company, did no violence to the contract clause of the Constitution.

Held further, that a private property owner was no party to the contract between the State and the Federal Government, and stood in no position to take advantage of a default of the State in respect to its contract. His rights were entirely subsidiary to those of the Government, and if the latter chose to acquiesce in the abandonment of the canals, he had no right to complain.

THIS was a petition filed in the Court of Common Pleas of Franklin County, Ohio, by the plaintiff Walsh, to enjoin the defendant railroad company from entering upon the property of the Lancaster Lateral Canal Company, and upon plaintiff's premises, and from constructing a railroad thereon, and for

a decree declaring a certain act of the General Assembly of Ohio giving it permission to do so to be null and void.

The case was determined upon demurrer to the petition, which set forth, substantially, the following facts: On February 4, 1825, the General Assembly of the State passed "an act to provide for the internal improvement of the State of Ohio, by navigable canals," 23 Ohio Stat. 50, among which was the Ohio Canal, extending from the mouth of the Scioto River through the State of Ohio to Lake Erie, and passing through the village of Carroll in the county of Fairfield. On February 8, 1826, the Lancaster Lateral Canal Company was incorporated by act of the General Assembly, 24 Ohio Laws, 71, and authorized to construct and operate a canal "from the town of Lancaster to such point of the Ohio Canal as shall be found most eligible." The village of Carroll was fixed upon as the terminus.

On May 24, 1828, Congress passed an act to aid the State of Ohio in the construction of its canals, 4 Stat. 305, by the fifth section of which act (printed in full in the margin)[1] Congress granted to the State 500,000 acres of land in that State for this purpose, with a proviso that "the said canals, when completed or used, shall be, and forever remain, public high-

---

[1] SEC. 5. And be it further enacted, That there be, and hereby is, granted to the State of Ohio five hundred thousand acres of the lands owned by the United States, within the said State, to be selected as hereinafter directed, for the purpose of aiding the State of Ohio in the payment of the debt, or the interest thereon, which has heretofore been, or which may hereafter be, contracted by said State in the construction of the canals within the same, undertaken under the authority of the laws of said State, now in force, or that may hereafter be enacted, for the extensions of canals now making; which land, when selected, shall be disposed of by the legislature of Ohio, for that purpose, and no other: *Provided*, The said canals, when completed or used, shall be, and forever remain, public highways, for the use of the Government of the United States free from any toll or charge whatever, for any property of the United States, or persons in their service passing along the same: *And provided further*, That the said canals, already commenced, shall be completed in seven years from the approval of this act, otherwise the State of Ohio shall stand bound to pay over to the United States the amount which any lands sold by her, within that time, may have brought; but the validity of the titles derived from the State by such sales shall not be affected by that failure.

ways, for the use of the Government of the United States, free from any toll or charge whatever, for any property of the United States, or persons in their service passing along the same." The seventh section of the act declared that "this act shall take effect, *provided*, the legislature of Ohio, at the first session thereof, hereafter to commence, shall express the assent of the State to the several provisions and conditions hereof; and unless such expression of assent shall be made, this act shall be wholly inoperative."

Pursuant to this act, the General Assembly of the State of Ohio on December 22, 1828, passed an act expressly declaring the assent of the State to the provisions and conditions of the act of Congress. Under these acts the State received and took possession of the 500,000 acres of land provided by the grant, and from time to time sold and disposed of the same, and received from the proceeds of such sale somewhat more than $2,200,000.

The Lancaster Lateral Canal Company, incorporated as above stated, proceeded to construct and operate its canal under its charter until December 22, 1838, when it sold and conveyed the same to the State of Ohio, under an authority conferred upon the Board of Public Works, by an act passed March 9, 1838, for the sum of $61,241, which was paid to the company out of the funds realized by the State from the sale of the Congressional land grant. The canal was subsequently, under an act of the legislature, extended from its terminus in Lancaster to the town of Athens, in Athens County, was opened as a continuous line of canal for navigation purposes prior to January 1, 1842, and this extension was also paid for by moneys realized from the sale of the land grant.

The complaint further averred that "ever since the construction of said canal, which is and has been known as the Hocking Canal, the same has been, and still is, a public highway, which has been used for the use of the State of Ohio and the Government of the United States, in pursuance of the several acts of Congress and of the General Assembly of the State of Ohio, hereinbefore set forth."

On April 12, 1894, the Columbus, Hocking Valley and

Athens Railroad Company, defendant herein, was organized and incorporated for the purpose of building a railroad from the city of Columbus through the counties of Franklin, Fairfield, Hocking and Athens to the city of Athens, and on the 18th day of May, 1894, the General Assembly of the State passed an act for the abandonment of the Hocking Canal for canal purposes and for leasing the same to this railroad company. (91 Ohio Stat. 327.) The act is printed in full in the margin.[1] The fourth section of the act provided that the rail-

---

[1] An act to provide for the abandonment of the Hocking Canal for canal purposes and for leasing the same to the Columbus, Hocking Valley and Athens Railroad Company.

SECTION 1. Be it enacted by the General Assembly of the State of Ohio, That the Hocking Canal, from its junction with the Ohio Canal in the village of Carroll, Fairfield County, to its southeastern terminus in the village of Nelsonville, Athens County, be and the same hereby is abandoned for canal purposes, and the same shall not be used for canal purposes during the pending of the lease provided in the next section of this act.

SEC. 2. There is hereby granted the right, franchise and privilege of constructing, maintaining and operating over, upon and along the Hocking Canal and property of the State of Ohio adjacent thereto, a railroad with single or double tracks, side tracks, switches, bridges, stations and other structures usual and incidental to the operation of a railroad, to the Columbus, Hocking Valley and Athens Railroad Company, its successors and assigns, for the term of ninety-nine years, renewable forever, for and in consideration of the payment by said company, its successors or assigns, to the treasurer of the State of Ohio on the first day of July, 1894, of the sum of fifty thousand dollars, and on the first day of January, 1900, and of each and every year thereafter, during the term of this lease, of the sum of ten thousand dollars annual rental.

SEC. 3. Said instalment of fifty thousand dollars shall be paid into the state treasury before the construction of said railroad is begun, and for the remaining instalments of rental the State of Ohio shall have a first lien upon said railroad, together with its switches, side tracks, bridges and other structures erected on said property of the State of Ohio, which shall be superior to any and all other liens of every kind upon the same. The said Columbus, Hocking Valley and Athens Railroad Company shall further execute unto the State of Ohio, to be approved by the auditor of state, secretary of state and attorney general, or any two of them, a good and sufficient bond in the sum of one hundred thousand dollars conditioned that said company will faithfully build said railroad in compliance with the condition and terms of this act, and upon failure to build said road within the time herein specified, they shall be liable to the State of Ohio in the full sum of one hundred thousand dollars as stipulated damages. Said bond

road company should have the exclusive right during the term of the lease (ninety-nine years) "to use and occupy the property aforesaid, or so much thereof as may be necessary, for the purpose of constructing, maintaining and operating the railroad thereon. Said company shall not disturb any vested rights or privileges of abutting property holders along said canal, and shall hold the State harmless from all loss or damage resulting to such property holders by reason of the construction and operation of said railroad."

The plaintiff further averred that the defendant was making preparations to build its road upon the line of the canal, and was threatening to take possession of its property without having acquired the rights and interests in the said lands and tenements belonging to the plaintiff, whose lands are located on both sides of the Hocking Canal, about five miles north of the city of Lancaster, in Fairfield County, and without having purchased or acquired by condemnation or otherwise the right to enter upon said lands and to construct said railroad. That such road will constitute a permanent trespass upon plaintiff's property, and will place large addi-

---

shall be executed and filed with the secretary of state within ten days after the passage of this act.

SEC. 4. In consideration of the payments aforesaid, said railroad company, its successors and assigns, shall have the exclusive right during the term aforesaid to use and occupy the property aforesaid, or so much thereof as may be necessary, for the purpose of constructing, maintaining and operating a railroad thereon. Said company shall not disturb any vested rights or privileges of abutting property holders along said canal, and shall hold the State harmless from all loss or damage resulting to such property holders by reason of the construction and operation of said railroad: *Provided,* That when said railroad, its successors and assigns, cease to use said canal for railroad purposes, said canal property shall revert to the State for canal purposes.

SEC. 5. This act shall not be construed to prevent the levying and collecting of taxes on said railroad in the same manner as they are levied and collected on other railroad property in this State.

SEC. 6. The work of constructing said railroad shall be commenced within six months after the passage of this act, and the same shall be completed within two years thereafter.

SEC. 7. This act shall take effect and be in force from and after its passage.

tional burdens upon his lands, which will render the same inconvenient and difficult of access; and great and irreparable injury will be done in the premises unless the defendant be restrained by an order of the court from taking possession of said canal and the said premises of plaintiff and constructing the railroad thereon.

The gist of the complaint lies in the allegation that the act of May 18, 1894, authorizing the abandonment of the canal, conflicts with that clause of the Constitution which provides that " no State shall pass any law impairing the obligation of contracts," and also with several provisions of the constitution of Ohio not necessary to be here enumerated.

A general demurrer was filed to this petition, which was sustained by the court and the petition dismissed. Plaintiff appealed the case to the Circuit Court, which also sustained the demurrer, whereupon plaintiff appealed the case to the Supreme Court of the State, which reversed the judgment of the Circuit Court, and ordered that the railroad company be enjoined from entering upon the lands of the plaintiff until it had condemned and paid for the additional burden of constructing and operating the railroad on the land according to law. 58 Ohio St. 123.

Upon motion of the plaintiff the court certified that, in the rendition of this judgment it became material to determine whether the act of May 18, 1894, was repugnant to the contract clause of the Constitution, and ordered it to be further certified that the court adjudged that it was not in violation of or repugnant to such clause, and that such act was valid and binding upon the plaintiff. Whereupon plaintiff sued out a writ of error from this court.

*Mr. J. B. Foraker, Mr. T. E. Powell* and *Mr. D. J. Ryan* for plaintiffs in error.

*Mr. D. L. Sleeper, Mr. C. H. Grosvenor* and *Mr. John J. Stoddart* for defendant in error.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

·1. Motion was made to dismiss the writ of error in this case for want of a Federal question. The decision of this motion was postponed to the merits, and we are now of opinion that it must be denied.

The position of the plaintiff is that, the act·of Congress of May 24, 1828, granting to the State of Ohio 500,000 acres of land for the construction of canals, and providing that such canals, " when completed or used, shall be, and forever remain, public highways, for the use of the Government of the United States," and the acceptance thereof, by the General Assembly, constitute a contract by the State for the perpetual maintenance of such canals as public highways, at least until they were given up by consent of the United States, and that the subsequent act of the General Assembly of May 18, 1894, providing for the abandonment of such canals, without such consent being given, was obnoxious to that provision of the Federal Constitution declaring that no State shall pass a law impairing· the obligation of contracts.

The main question then is, whether the acceptance of this act of Congress of ·1828 by the General Assembly of Ohio should be interpreted as raising a contract by the State for the perpetual maintenance of these canals as public highways. We have repeatedly held that, where the plaintiff relies for his recovery upon the impairment of a contract by subsequent legislation, it is for this court to determine whether such contract existed, as well as the question whether the subsequent legislation has impaired it. *State Bank of Ohio* v. *Knoop*, 16 How.·369; *Bridge Proprietors* v. *Hoboken Co.*, 1 Wall. 116. This rule also applies to a contract alleged to be raised by a state statute, although the general principle is undoubted that the construction put by state courts upon their own statutes will be followed here. *Jefferson Branch Bank* v. *Skelly*, 1 Black, 436; *McGahey* v. *Virginia*, 135 U. S. 662; *Douglas* v. *Kentucky*, 168 U. S. 488; *McCullough* v. *Virginia*, 172 U. S. 102.

We cannot say that it is so clear that the statute in question is not open to the construction claimed that we ought to dismiss the writ as frivolous, within the meaning of the cases

which hold that, where the question is not of the validity but
of the existence of an authority, and we are satisfied that
there was and could have been no decision by the state court
against any authority of the United States, the writ of error
will be dismissed. *Millingar* v. *Hartupee*, 6 Wall. 258; *New
Orleans* v. *N. O. Waterworks Co.*, 142 U. S. 79, 87; *Hamblin*
v. *Western Land Co.*, 147 U. S. 531. If the statute were given
the construction claimed by the plaintiff, it would be difficult
to avoid the conclusion that the abandonment of the canal
under the act of 1894, and its lease to the defendant railroad
company, was a repudiation of the duty of the State to main-
tain it as a public highway; though the question would still
remain whether the plaintiff would be in a position to take
advantage of such default.

2. In disposing of this case the Supreme Court of the State
of Ohio held (1) that the defendant railroad corporation had
the power to build a railroad between the termini named, and
to acquire by purchase or condemnation a right of way for its
road, and other property necessary for its operation; (2) that
the act of Congress of 1828, donating land to the State for the
construction of canals, and the act of the General Assembly
of the State accepting the same, did not constitute a contract
for the perpetual maintenance of such canals; (3) that if such
a contract existed, the plaintiffs in these suits were not parties
to it; (4) that the Lancaster Lateral Canal Company did not
acquire a fee simple in the lands, but a title for the uses and
purposes of the canal, and the company could not, when the use
ended, sell them to others, but the lands reverted to the owners
of the freehold; (5) that by leasing the lands for the purposes
of a railroad, the original easement in the lands was not extin-
guished, but passed to the purchaser, who took it subject to
the duty of making compensation to the owner of the freehold
for the additional burden imposed on the land, and such dam-
ages as might result to him from the new use.

We are concerned only with the second and third of these
conclusions, which turn upon the construction to be given to
the act of Congress of 1828. If, by the acceptance of this
act by the General Assembly of the State of Ohio, the State

became irrevocably bound to keep up the canals for all time, for the use, not only of the Government, but of every one who incidentally profited by their preservation, it is impossible to escape the conclusion that their subsequent abandonment impaired the obligation of such contract. But we think the Supreme Court of Ohio was clearly right in its interpretation of the statute. The principal object of the act was a donation of lands to aid the State in works of internal improvement, which were then being extensively contemplated in the newer States of the West. Canals, at that time, embodied the most advanced theories upon the subject of internal transportation. Congress annexed as a condition to the grant that the canals built by its aid should " when completed or used, be and forever remain, public highways, for the use of the Government." Counsel for the defendant insists that, under the terms of the proviso, the obligation to maintain these canals as public highways existed only so long as they were "*used*" as such, and this was evidently the opinion of the Supreme Court of Ohio. Counsel for plaintiff insists, upon the other hand, with much reason, that the proviso, that " the said canals, *when completed or used*, shall be and ever remain public highways," marks the beginning of the time when the obligation was intended to operate — that is, if the canals were completed, or without being completed, were so far completed as to be capable of use, and were *used*, the obligation to maintain them in perpetuity attached. Whatever be the proper interpretation of these words, and they are by no means free from ambiguity, the dominant idea of the proviso was evidently to compel the State to maintain the canals as *public* highways, and to allow the Government free use of them "for any property of the United States, or persons in their service passing along the same." Whether the canals should be maintained forever as such, or should give place to more modern methods of transportation, was a matter of much less moment to the United States than to the State. The General Government was only interested in securing their use for the public, and the free transportation of its own servants and property. The object of the act was to facilitate and encourage public improve-

ments, but not to stand in the way of the adoption of more perfect methods of transportation which might thereafter be discovered. Had the question of internal improvements arisen ten or fifteen years later, when railways began to be constructed, it is quite improbable that the State would have embarked upon this system of canals, or that Congress would have aided it in the enterprise. Waiving the question whether the State could have abandoned the lands upon which these canals were built as public highways, we think it entirely clear that Congress could not have intended to tie the State down to a particular method of using them, when subsequent experience has pointed out a much more practicable method, which has supplanted nearly all the canals then in use. There was no undertaking to keep up the canals for all time, and we think the proper construction of the proviso is that the Government should be entitled to the free use of the canals so long as, and no longer than, they were maintained as public highways, and that the act of 1894, leasing these lands to the defendant for an analogous purpose, does no violence to the contract clause of the Constitution.

Were the question one of doubt, we should hesitate long before refusing to defer to the many opinions of the Supreme Court of Ohio, through several changes in its personnel, holding it to be within the power of the State to abandon the canal for other public purposes, and that such abandonment gave no right of action to private parties incidentally affected or damnified by it, *Hubbard* v. *City of Toledo*, 21 Ohio St. 379; *Little Miami Elevator Co.* v. *Cincinnati*, 30 Ohio St. 629; *Fox* v. *Cincinnati*, 33 Ohio St. 492, affirmed by this court, 104 U. S. 783; *Hatch* v. *Railroad Co.*, 18 Ohio St. 92; *Malone* v. *City of Toledo*, 28 Ohio St. 643; *State* v. *Board of Public Works*, 42 Ohio St. 607; *Pennsylvania & Ohio Canal Co.* v. *Commissioners*, 27 Ohio St. 14; *McComb* v. *Stewart*, 40 Ohio State, 647; *State* v. *Snook*, 53 Ohio State, 531; but the State of Ohio does not stand alone in affirming this principle. *People* v. *Kerr*, 27 N. Y. 188; *Lexington &c. Railroad* v. *Applegate*, 8 Dana, 289; *West* v. *Bancroft*, 32 Vermont, 367; *Haldeman* v. *Pennsylvania Central Railroad*, 50 Penn. St. 425; *Chase* v. *Sutton Mfg. Co.*, 4 Cush. 152.

In addition to this, however, the plaintiff stands in no position to take advantage of a default of the State in this particular. He was not a party to the contract between the state and the Federal Government; his rights were entirely subsidiary to those of the Government; and if the latter chose to acquiesce in the abandonment of the canals, as it seems to have done, he has no right to complain. He can only sustain this bill upon the theory that his rights are equal to those of the Government, and that he can call upon the State to maintain the canal for his benefit.

The case of *Grinnell* v. *Railroad Company*, 103 U. S. 739, is pertinent in this connection. That was an action in ejectment brought by a railroad company to recover certain parcels of its land grant, upon which the defendants had settled and asserted rights under the homestead and preëmption laws of the United States. Their defence was that the company had no title, because it had lost whatever right it had to the lands by a change in the location of the road, and because locating the road as it was completed did not bring these lands within the limits of the land grant act. The court held that the lands, being within the limits of the first location, the construction of the road on the new line did not annul or defeat, without further action on the part of the United States, the title thus vested; that Congress had consented to the change without any declaration affecting the title already vested in the company by the first location, and that defendants were bound thereby. In delivering the opinion of the court, Mr. Justice Miller observed : " Another point equally fatal to the plaintiffs in error is, that the assertion of a right by the United States to the lands in controversy was wholly a matter between the Government and the railroad company, or its grantors. The legal title remains where it was placed before the act of 1864. If the Government desires to be reinvested with it, it must be done by some judicial proceeding, or by some act of the Government asserting its right. It does not lie in the mouth of every one who chooses to settle on these lands to set up a title which the Government itself can only assert by some direct proceeding. These plaintiffs had no right to stir

up a litigation which the parties interested did not desire to be started. It might be otherwise if the legal title was in the Government. Then the land would be subject to homestead or preëmption rights."

A similar case is that of *Van Wyck* v. *Knevals,* 106 U. S. 360. In that case the railroad company had filed a map of definite location, and the land department had withdrawn the odd-numbered sections appropriate thereto; but in constructing the road the company departed from the line indicated. The lands in dispute were within ten miles of the road as built and of the line delineated on the map. They were entered by Van Wyck, who received a patent for them, and Knevals, who had acquired his rights from the railroad company, filed a bill against Van Wyck seeking to charge him as trustee for the lands, and the court decreed a conveyance accordingly. The defendant attacked the right of the company to the grant, alleging that it never completed the construction of the entire road for which the grant was made; that after filing its map with the Secretary of the Interior it changed the route of the road for a part of the distance. The court held, however, that the company had constructed a portion of the proposed road, and that portion was accepted as completed in the manner required by the act of Congress; that if the whole of the proposed road had not been completed any forfeiture consequent thereon could only be asserted by the United States through judicial proceedings or through the action of Congress. "A third party cannot take upon himself to enforce conditions attached to the grant when the Government does not complain of their breach. The holder of an invalid title does not strengthen his position by showing how badly the Government has been treated with respect to the property."

The only contract in this case was between the State of Ohio and the United States. Plaintiff was neither party nor privy to such contract. It was within the power of the Government to prosecute the State for a breach of it, or to condone such breach, if it saw fit. As it adopted the latter course and has deemed it proper to acquiesce in the abandonment of the canals and in the State turning them over to the railroad

company, it does not lie in the mouth of the plaintiff to complain.   This disposes of every question called to our attention in the briefs of counsel.

The plaintiff is amply protected by the decree of the Supreme Court enjoining the railroad company from entering upon his lands until payment has been made, after proper proceedings, for the increased burden caused by the use of the lands for the railroad.   If any taking of the lands consequent upon the remanding of the cause for the purpose stated should suggest ulterior questions they do not arise there, and would not be concluded by an affirmance of the decree now before us for review.

The decree appealed from is therefore

*Affirmed.*