UNITED STATES EX REL. JONES *v.* FISHER.

PUBLIC LANDS; APPEAL AND ERROR.

1. The act of Congress of April 19, 1904 (33 Stat. at L. 184, chap. 1394), for the relief of Wisconsin entrymen who had settled upon land afterwards found to belong to a railroad company, and the subsequent act of May 29, 1908 (35 Stat. at L. 465, chap. 220), and joint

resolution of June 25, 1910 (36 Stat. at L. 885), extending and defining the original act, gave such entrymen or their widows, and if no widows, their minor children, the right, in making final proof upon homestead entries upon other land, to have credit for the period of their bona fide residence upon the lands for which they were unable to complete title; but such right was a mere personal privilege, not assignable by such entrymen.

2. Clause 6 of sec. 250 of the act of Congress of March 3, 1911 (36 Stat. at L. 1087, chap. 231), known as the Judicial Code, giving the right to unsuccessful parties to have reviewed by the Supreme Court of the United States any final judgments of this court in cases in which the construction of any law of the United States is drawn into question by the defendant, does not apply to a mandamus proceeding in which the Secretary of the Interior is the respondent, and in which the final decision of this court was in his favor and which the petitioner for the writ seeks to have reviewed.

3. Where the unsuccessful party to an appeal in this court, based his appeal upon the claim that the other party, the Secretary of the Interior, misinterpreted certain acts of Congress, but conceded his authority in the premises, his application for a writ of error to the Supreme Court of the United States will be denied, when based upon cl. 5 of sec. 250 of the act of Congress of March 3, 1911 (36 Stat. at L. 1087, chap. 231), giving the right of review by that court of final judgments of this court "in cases in which the validity of any authority exercised under the United States, or the existence or scope of any power or duty of an officer of the United States, is drawn in question."

No. 2323.   Submitted November 9, 1911.   Decided January 2, 1912.

HEARING on an appeal by the relator from a judgment of the Supreme Court of the District of Columbia, dismissing a petition for the writ of mandamus against the Secretary of the Interior.                                    *Affirmed.*

The facts are stated in the opinion.

*Mr. Edward S. Bailey,* and *Messrs. Tucker, Kenyon, & Macfarland* for the appellant.

*Mr. Charles W. Cobb,* Assistant Attorney General, *Mr. F. W. Clement,* and *Mr. C. Edward Wright,* Assistants, for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

This is an appeal from the judgment of the supreme court of the District, dismissing the petition of the relator, Ben B. Jones, appellant here, for a writ of mandamus to direct the Secretary of the Interior to grant a patent to Leopold Bauer for certain land situated at Glenwood Springs, Colorado, and to deliver said patent to the relator, Bauer's interest having been assigned to him.

The case was heard upon the pleadings and upon oral and documentary evidence. The material facts are as follows: On June 12, 1893, Bauer made homestead entry (No. 3,369), at Ashland, Wisconsin, for 120 acres of land which, under an order of the Interior Department of October 22, 1891, was subject to such entry. This land had constituted part of a grant to the state of Wisconsin in aid of railroad construction (11 Stat. at L. 20, chap. 43). On June 3, 1895, the Supreme Court of the United States in *Wisconsin C. R. Co.* v. *Forsythe,* 159 U. S. 46, 40 L. ed. 71, 15 Sup. Ct. Rep. 1020, sustained the claim of that company to this grant. Thereafter, on November 13, 1895, the Land Office notified Bauer that his entry was held for cancelation, and, on March 24, 1896, cancelation was actually effected. Bauer nevertheless continued to reside upon the land until judgment against him was entered in ejectment proceedings, May 15, 1899.

Congress, evidently appreciating the unfortunate situation of innocent settlers upon this railroad grant, passed a special act for their relief, April 19, 1904 (33 Stat. at L. 184, chap. 1394). This act provided that all "qualified homesteaders" who had settled upon the land embraced in said grant "and were thereafter prevented from completing title to the land so settled upon and improved," by reason of said decision, should "in making final proof upon homestead entries made for other lands, *be given credit for the period of their bona fide residence* upon, and the amount of their improvements on the land for which they were unable to complete title." Anyone who had already received the benefits of the homestead law was expressly excluded from the relief provided in this act.

On May 29, 1908, the previous relief measure having expired by limitation, Congress passed another (35 Stat. at L. 465, chap. 220) in the same form, but extending "the right to make such second entry" to the widow of any entryman entitled to the benefits of the act, and, if no widow, to the minor child or children, if any, of such countryman.

On June 25, 1910 (36 Stat. at L. 885), Congress, by joint resolution, declared "that in computing the time for which credit shall be given to the homestead settlers, their widows, or minor heirs," under said act of 1908, "credit shall be given for the full period of actual residence upon the lands to which they were unable to complete title," such credit, however, not to extend "beyond the date of judgments in ejectment against such settlers rendered by the courts." This resolution further extended the limitation of the act of 1908 one year from the passage of said resolution.

On August 12, 1904, Bauer appeared before the register of the United States Land Office at said Ashland, Wisconsin, with two witnesses and executed affidavits as to what he had done upon the land comprising said homestead entry, by way of complying with the requirements of the homestead law. He did not, however, execute the final affidavit required of homestead entrymen, nor had he previously published notice of his intention to submit final proof.

On May 29, 1908, which it will be noticed was the date of the passage of the second remedial act, Bauer entered into a contract with the appellant, Jones, by which Bauer agreed to sell and transfer to Jones all right, title, and interest in any lands to which he (Bauer) might become entitled under said act.

On December 8, 1908, Bauer personally appeared before the United States Land Office at Glenwood Springs, Colorado, and filed an application to enter as a homestead 164.10 acres of land under the provisions of said act of 1908. His agreement with appellant was then in full force. With his application he filed the affidavits executed on August 12, 1904, at Ashland, Wisconsin. He also executed before the register of the Land Office at said Glenwood Springs what purported to

be a final affidavit of his homestead entry at Ashland, Wisconsin. This affidavit he then filed in support of his new entry. He did not, however, execute a final affidavit concerning the new entry, nor did he personally execute a nonmineral affidavit, which the regulations of the Department require. These alleged proofs were accepted by the Colorado Springs Land Office, and a final certificate issued. On November 26, 1909, the commissioner of the General Land Office held this entry for cancelation, on the ground that Bauer was not entitled to credit on the Wisconsin land beyond November 26, 1905, the date of the notice to him that his entry was held for cancelation.

Appellant contends that Bauer, having resided upon the Wisconsin entry for a period of more than five years, became possessed, upon the passage of said act of 1908, of an alienable interest in other land which he might select in lieu of that entry; in other words, that Congress, in enacting the relief measures of 1904 and 1908, intended to confer something more than a privilege to acquire upon an equitable basis other homes in place of those lost; and that by this legislation a script or lieu land right was intended to be conferred upon all those who for five years had resided upon the Wisconsin entries. Of course, if this position is correct it was unnecessary for Bauer, when he made his Colorado entry, to execute the affidavit required of homesteaders, *assuming* that his proof concerning the Wisconsin entry was regular in form and sufficient in substance.

However deserving may have been these Wisconsin entrymen, we are here confined to the special relief conferred by Congress. What was that relief? The act of 1904 dealt with "qualified homesteaders" who, without fault of theirs, were prevented from completing title to the homes upon which they had settled. The act did not in terms confer other lands upon those entrymen without reference to the intent of the entrymen in filing upon such other lands. On the contrary, the act in terms provided that such entrymen, "in making final proof *upon homestead entries made for other lands,*" should be given credit for the period of their *bona fide residence*

upon the lands for which they were unable to complete title. The privilege thus conferred was restricted to the entrymen. It is inconceivable that, had Congress intended to confer a script right upon these entrymen, it would have ignored the rights of heirs of deceased entrymen. Nor is this all. If, prior to the passage of the act, an entryman had entered and perfected title to another homestead, he was thereby precluded from the relief provided. Had the relief measure been merely compensatory in its nature, there would have been no reason for this discrimination, since such an entryman had really lost a homestead.

The act of 1908, under which Bauer's Colorado entry was made, contains still further evidence of the underlying motive of Congress in extending relief to these settlers. The benefits of that act are extended to the widow of an entryman or, if there be no widow, to his minor child or children. Why restrict the benefits of the act in event of the prior decease of an entryman to his widow or, if he left no widow, to his minor child or children? Obviously to provide with another home those immediately dependent upon the deceased entryman. We think, therefore, that these two remedial acts conferred upon the beneficiaries a personal privilege, that of filing on another *homestead* and receiving credit for the period of bona fide residence and improvements upon the prior one.

Appellant has referred to *Webster* v. *Luther,* 163 U. S. 331, 41 L. ed. 179, 16 Sup. Ct. Rep. 963, where it was held that the right granted to soldiers who had entered under the homestead laws less than 160 acres, "to enter so much lands as, when added to the quantity previously entered, shall not exceed 160 acres," did not require the soldier to leave or abandon his home to select the additional land. That case is not in point. There was no limitation there as here. The additional land conferred was in the nature of a gift or reward to those who had served their country.

Bauer's Wisconsin entry was made in June, 1893. The decision of the Supreme Court, that the land he had entered was not subject to entry, was rendered in June, 1895. In November, 1895, as we have seen, Bauer received actual notice

that his entry was held for cancelation.   How can it be said
that his residence upon this Winconsin entry was bona fide
after knowledge on his part that he was a trespasser upon
the land?   The act of 1904 as well as the act of 1908 directs
the giving of credit for the period of residence in good faith
upon this railroad grant.   Residence, after knowledge on the
part of the entrymen that they were trespassers, was not resi-
dence in good faith.   When, therefore, Bauer made his Colo-
rado entry he was entitled to something less than two and one-
half years' credit on account of his residence and improve-
ments upon the Wisconsin entry.   Even assuming, therefore,
that the act of 1908 conferred a script or alienable right upon
those who were ready to make final proof upon said railroad
grant, Bauer is in no better position, since it was still necessary
for him to reside something more than two and one-half years
upon his second entry before he would be in a position to offer
final proof thereon.   Having alienated his interest in this
second entry, he could not, of course, make the affidavit which
the law required.   The entry, therefore, was imperfect and
illegal.   *Anderson* v. *Carkins,* 135 U. S. 483, 34 L. ed. 272,
10 Sup. Ct. Rep. 905.   Being illegal, its cancelation was
proper.   *Hawley* v. *Diller,* 178 U. S. 476, 44 L. ed. 1157, 20
Sup. Ct. Rep. 986.

It may well be that, had Bauer made a legal entry on the
Colorado land, he would have been entitled to the benefits of
said resolution of 1910 upon its passage.   That resolution, how-
ever, does not make valid what was theretofore void.   It is
rather an additional concession to those making entry under
the act of 1908.   Under that act, as we have seen, credit was
given for the period of residence in good faith, while under
this resolution credit is given for "actual residence," not, how-
ever, extending beyond the date of judgments in ejectment.
Having made a void entry, Bauer was in no position to receive
the benefits of this resolution.   He might, however, have made
a new entry within twelve months from the passage of this
resolution, which would have entitled him to the benefits there-
in provided.   Even now, while the provisions of these remedial
measures have expired by limitation, Bauer, not having ex-

hausted his homestead right, is entitled to make a new homestead entry.

Judgment affirmed, with costs.          ·     *Affirmed.*

On January 15, 1912, the appellant applied for the allowance of a writ of error to the Supreme Court of the United States.

The application was denied March 4, 1912, Mr. Justice Robb delivering the opinion of the Court:

Petition for writ of error to remove this cause to the Supreme Court of the United States, there to have reviewed the final judgment of this court rendered January 2, 1912.

As no constitutional question is involved, we must look to the 5th and 6th clauses of sec. 250 of the Act to Codify, Revise, and Amend the Laws Relating to the Judiciary, approved March 3, 1911 (36 Stat. at L. 1159, chap. 231), to determine the question presented. Clause 5 confers an absolute right to have reviewed any final judgment or decree of this court by the Supreme Court "in cases in which the validity of any authority exercised under the United States, or the existence or scope of any power or duty of an officer of the United States, is drawn in question." Clause 6 provides for such a review "in cases in which the construction of any law of the United States is drawn in question by the defendant."

The judgment to review which a writ of error is sought sustained a judgment of the trial court dismissing relator's petition for mandamus to compel the Secretary of the Interior to grant a patent to one Bauer for certain land, and to deliver the patent to relator, the assignee of Bauer. It is clear, therefore, that clause 6 does not apply, since the United States was the defendant. Nor do we think clause 5 has any application. The relator based his claim to relief upon the remedial acts of April 19, 1904 (33 Stat. at L. 184, chap. 1394), May 29, 1908 (35 Stat. at L. 465, chap. 220), and June 25, 1910 (36 Stat. at L. 885), reviewed in our opinion. He did not, however, within the meaning of said 5th clause, challenge "the validity of any authority exercised under the United States," nor did he contend that the Secretary was ex-

ceeding the scope of his power or duty.   On the contrary, his contention was that the Secretary misinterpreted those remedial acts.   He conceded, indeed urged, the authority, power, and duty of the Secretary in the premises, but claimed a mistake in their exercise.   In *Walsh* v. *Columbus, H. Valley & A. R. Co.* 176 U. S. 469, 44 L. ed. 548, 20 Sup. Ct. Rep. 393, it was ruled that where the question is not as to the validity, but as to the exercise of an authority under the United States, a Federal question is not presented.   In *Baltimore & P. R. Co.* v. *Hopkins,* 130 U. S. 219, 32 L. ed. 908, 9 Sup. Ct. Rep. 503, and in *Abbott* v. *National Bank,* 175 U. S. 409, 44 L. ed. 217, 20 Sup. Ct. Rep. 153, it was observed that "the distinction is palpable between *a denial of the authority* and a denial of a right, title, privilege or immunity claimed under it."   See also *Kennard* v. *Nebraska,* 186 U. S. 304, 46 L. ed. 1175, 22 Sup. Ct. Rep. 879; *Baker* v. *Baldwin,* 187 U. S. 61, 47 L. ed. 75, 23 Sup. Ct. Rep. 19.   By analogy, these adjudications in our view are determinative of the question under consideration. A different view renders said clause 6 unnecessary and meaningless.   We are therefore constrained to deny the petition.

                              *Petition Denied.*

The appellant applied to the Chief Justice of the Supreme Court of the United States for the allowance of an appeal, and the application was referred by the Chief Justice to the Court. In an opinion written by Mr. Justice Holmes, the Court, on April 29, 1912, denied the application.