Dubuque & Sioux City Railroad Company and Illinois Central Railroad Company, Appellants, v. Ft. Dodge, Des Moines & Southern Railroad Company, and R. S. Lund, Sheriff of Webster County, Iowa.

**Railroads:** right to crossings: public use. Where it is made to appear that the construction of a railroad will furnish the public additional conveniences for travel and for transportation of freight, for which it is sought to establish a crossing over an existing road, there is a sufficient showing of public use to support the right to a crossing, although the road may be used chiefly for transporting freight for a manufacturing company; and upon a showing that the use is public the extent of such use is not material.

**Same:** necessity for crossing: character of same: statute. The statute confers upon one railroad company the right to a crossing of its line over another established road when necessary in the construction of the new road, and the only limitation on such right is that the crossing shall be so made as not to unnecessarily interfere with the use of the senior road; and the character of the crossing is dependent largely upon the facts of each case. In the instant case it is held that defendant is entitled to a crossing over plaintiff's road, and under the circumstances as shown a grade crossing protected by an interlocking switch system will not unnecessarily interfere with plaintiff's rights.

*Appeal from Webster District Court.*—Hon. C. E. Albrook, Judge.

Wednesday, April 6, 1910.

ACTION in equity to restrain the defendant from cross-ing the plaintiffs' road at grade . There was a judgment dismissing plaintiffs' petition, and they appeal.—*Affirmed.*

*Kelleher & O'Conner,* for appellants.

*S. R. Dyer* and *Healy & Healy,* for appellees.

SHERWIN, J.—The Dubuque & Sioux City Railroad Company owns the steam road that the defendant seeks to cross.   It is operated, however, by the Illinois Central Rail-road Company as part of its through line from Chicago, Ill., to Omaha, Neb., and Sioux City, Iowa, passing through Ft. Dodge.   East of Ft. Dodge all of the traffic of the road passes over a single track.   The Ft. Dodge, Des Moines & Southern Railroad is an interurban electric road with its main line between Des Moines and Ft. Dodge and it crosses the plaintiff's road a little east of the corporate limits of Ft. Dodge by an under crossing. There are several extensive manufacturing industries some three or four miles east of Ft. Dodge and near the plain-tiff's road on both the north and south sides thereof. The defendant road has built east from Ft. Dodge to some of the plants that are north of plaintiff's road, and proposes to extend its tracks across the plaintiff's road at the point in question for the purpose of reaching the mills on the south thereof.   The defendant wants to make a grade crossing and install an interlocking plant therefor, and the plaintiffs ask that it be enjoined from so doing.

The appellants contend that the evidence shows that the proposed extension of the defendant's road and the crossing in question are intended merely for the purposes of switching, or, at most, for industrial pur-poses, and that such use is not a public use. It is conceded of course, that the power of eminent domain can only be exercised for the public good;

1. RAILROADS: right to crossings: public use.

and hence the question is whether the evidence shows that the proposed road and crossing will benefit the public. There is evidence tending to show that the main purpose thereof is to reach the product of mills situated south of the plaintiff's road. But there is also evidence showing that it will furnish the public with additional conveniences for travel and for the transportation of freight. It may be that, where a railroad is built for the sole and only purpose of reaching a particular manufacturing establishment, it should not be held to be built for public use. But it seems clear on principle that a public use exists whenever it appears that the public has the right to use a road, and will in all probability do so to some extent at least. And, when once it is found that the use is public, the right of eminent domain exists, though private purposes may be subserved at the same time. Nor does the transportation of freight alone make the road one for private use. *Phillips v. Watson,* 63 Iowa, 28; Lewis, Eminent Domain (2d Ed.) section 170; Elliott on Railroads, section 961a; *Kettle River R. Co. v. Eastern R. Co.,* 41 Minn. 469 (43 N. W. 469, 6 L. R. A. 111). If the use is public, the extent of such use can make no difference with the right. We think the use is shown to be public in this case.

A much more serious question is presented by the appellants' contention that the crossing is not necessary within the meaning of the statute, and that a grade crossing at the point in question will unnecessarily interfere with the operation of its road. Section 2020 of the Code provides that a railway may be constructed or carried "across, over, or under" another railway, "when it may be necessary in the construction of the same, and in such cases it shall so construct its crossings as not unnecessarily to impede the travel," or "transportation . . . upon the railway . . . so crossed." The proposed crossing is

2. SAME: necessity for crossing: character of same: statute.

only a little over a mile east of the crossing of the main line, and it is urged that the defendant can reach the same mills and render the public the same service by building from its main line east, south of the plaintiff's road. That it is possible to build a road there is fully shown by the evidence. The expense would be great, however, for about two thousand feet of the distance would necessarily consist of deep cuts and high fills. It would also require much additional track through rough land because the road that it is proposed to extend is now constructed to within eight hundred feet of the proposed crossing. In addition to the objection already named, it appears that the building of a line there would necessitate the operation of two roads into a part of the same territory or the abandonment of the one already built to within eight hundred feet of the proposed crossing. The statute only requires that the crossing shall be reasonably necessary. An absolute necessity need not exist. It is enough if it appears that the crossing is reasonably necessary and proper for the accomplishment of the purpose proposed, namely, the reasonable accommodation of the public. *Mobile & C. R. Co. v. Alabama & C. R. Co.*, 87 Ala. 501 (6 South. 404); *Peoria R. Co. v. P. & R. Co.*, 66 Ill. 174; *New York & R. Co. v. Boston R. Co.*, 36 Conn. 196; Elliott on Railroads, section 1119. If the obstacles presented by a proposed route are so great as to prevent the building of the road, it is manifest that a different route may be necessary for the proper service of the public, and, in that view of the question, it is entirely legitimate to consider the question of the expense of building south of the plaintiff's track from the defendant's main line crossing. The statute confers the right to cross another road when it may be necessary in the construction of a new road, and the only limitation on such right is that the crossing shall be so made as not unnecessarily to interfere with the use of the senior road.

The remaining question, then, is whether a crossing at grade with an interlocking plant of standard design and construction will unnecessarily interfere with the plaintiff's use of its road. The appellants insist that it will, and that, if the defendant is permitted to cross at that point, it should do so through a subway crossing. The Chicago Great Western crosses the plaintiff's road a little over a mile east of the proposed crossing, and the interchange of business between the two roads requires more or less switching over the plaintiff's road from Ft. Dodge east to the Great Western crossing. And the evidence shows that some switching is done every day by an engine sent out from Ft. Dodge for that purpose. There are also twenty trains a day over the plaintiff's main line at the point in question. A subway would undoubtedly remove all of the ordinary causes of delay on account of crossings, and it would also lessen the danger of accidents whether the crossing is equipped with an interlocking device or not. But the statute does not require a subway crossing. All that it requires is that the crossing road shall not unnecessarily impede travel and transportation on the crossed road. *Humeston & S. Ry. Co. v. C., St. P. & K. Ry. Co.*, 74 Iowa, 554; *Railway Co. v. Railway Co.*, 91 Iowa, 16. As was said in both of these cases, the character of the crossing which should be required must depend largely upon the facts of each case. A grade crossing might be the right thing in a particular instance and be absolutely intolerable under different conditions. But it is a matter of common knowledge that under ordinary conditions and with reasonably good service a grade crossing protected by an interlocking system does not cause serious or unnecessary delay within the meaning of the statute.

Nor is the danger to the public such as can not be avoided by the exercise of proper care. The land at the place of the proposed crossing is practically level and

somewhat low and swampy. It is crossed by the plaintiff's road on a fill of about three and one-half feet, and a subway for the transaction of the defendant's proposed business could not be much less than twenty feet deep. The expense of draining the same would be great, and the entire cost thereof would be from $33,000 to $38,000, while the cost of a grade crossing and an interlocking plant would not exceed one-fourth of that amount. And the relative expense of the two crossings may properly be considered in determining which shall be made. *Humeston case, supra; Railway Co. v. Railway Co., supra.* The only unusual conditions to be met in the operation of an interlocking system at the proposed crossing would be the proximity thereto of the interlocking system at the Great Western crossing over a mile east of there. But the evidence is not at all convincing that the two systems operated independently, would interfere with the movement of the plaintiff's long freight trains. Such could not be the case with its east bound trains, and we are of the opinion that such instances would be rare when its trains were west bound.

A careful examination and consideration of the entire evidence has convinced us that the order of the trial court should be, and it is, *affirmed.*