WILBUR E. BROWNELLER, Appellant, v. NATURAL GAS PIPELINE COMPANY OF AMERICA, Appellee.

HATTIE E. KEMP, Appellant, v. NATURAL GAS PIPELINE COMPANY OF AMERICA, Appellee.

EMMA PRINE, Appellant, v. NATURAL GAS PIPELINE COMPANY OF AMERICA, Appellee.

HENRY PRINE, Guardian, Appellant, v. NATURAL GAS PIPELINE COMPANY OF AMERICA, Appellee.

JAMES D. RODGERS, Appellant, v. NATURAL GAS PIPELINE COMPANY OF AMERICA, Appellee.

No. 46143.

MARCH 9, 1943.

REHEARING DENIED JUNE 18, 1943.

Thomas J. Bray and McCoy & McCoy, all of Oskaloosa, T. L. Brookhart, Carlton Wilson, and Morrison & Morrison, all of Washington, for appellants.

Devitt, Eichhorn & Devitt, of Oskaloosa, Baldridge & Bailey, of Washington, and Ned P. Gilbert and J. J. Hedrick, both of Chicago, for appellee.

MANTZ, J.— In this trial there were involved certain equitable issues raised in five cases, all of which were tried together. In said trial there was but one defendant, Natural Gas Pipeline Company of America, and five plaintiffs: Wilbur E. Browneller; Hattie E. Kemp; Emma Prine; Henry Prine, guardian of the property of Norma Jean Prine, Joan Beverly Prine, and Robert Henry Prine, minors; and James D. Rodgers. The issues raised were as to the right of the defendant to condemn a right of way for its pipe line through various separate tracts of land belonging to the different plaintiffs, each plaintiff claiming that the proposed taking was under and by virtue of enactments of the Iowa Legislature which were violative of the Constitution of Iowa and the Constitution of the United States. A mandatory injunction against the defendant was asked. There was a trial on the issues involved and decrees rendered finding for the defendant, and the various plaintiffs appeal.

This appeal involves five cases, all of which were consolidated, both in the lower court and in this court, and this opinion is to apply to each with the same force and effect as if tried and submitted separately.

A brief statement will set forth the matters at issue. The Natural Gas Pipeline Company of America in 1930 or 1931 constructed a pipe line from the gas field in Texas across Oklahoma, Kansas, Nebraska, Iowa, and into Illinois, its eastern terminus being at the city of Joliet in the last-named state. It is engaged in transporting gas but is not a distributor, selling only by wholesale to various customers along the route. At that time there was no statute in Iowa granting conveyors of natural gas by pipe lines the right to condemn for right of way, and the defendant secured its right of way by purchase from the different owners through whose land the pipe line passed.

Later the Forty-fourth General Assembly, in chapter 191, amended the statutes granting the right of eminent domain to pipe lines upon certain terms and conditions, and granting to pipe lines then in existence a permit to be given by the Iowa Commerce Commission upon such pipe lines furnishing certain information as provided for in section 8338.27 of said chapter. The statute provided that the holder of such permit was vested with the right of eminent domain. [Section 8338.46, Code, 1939.]

In 1940, the defendant, in order to meet the increased demand for its product, decided to construct a second pipe line through Iowa and planned to parallel its first line. Since it was unable to secure the right of way from the various plaintiffs herein, defendant, on May 9, 1941, sought to condemn the necessary ground for such proposed second pipe line across the lands of the various plaintiffs and filed separate applications in each instance.

The commission appointed to fix damages for the land sought to be taken made the award in each case and appeals were taken by each plaintiff from said award. On October 4, 1941, separate petitions were filed in the lower court by each of the plaintiffs herein and these petitions raised no equitable issues and dealt only with the matter of damages. At that time the construction work had progressed to a point a short distance west of what is termed the "Kemp" land, being the tract farthest west of those wherein land was sought to be condemned.

On December 30, 1941, plaintiffs amended their respective petitions, and in such amendments for the first time raised equitable issues, and in the same pleadings raised constitutional questions and prayed for a temporary injunction restraining the defendant from taking land for right of way for its second pipe line. After notice was given a hearing was had and the prayer for the temporary injunction was denied on January 2, 1942. No appeal was taken from this order. On January 26, 1942, separate petitions were filed and were entitled "substituted petitions." These later were amended. Each substituted petition contains two counts. The first count raised the equitable issues which are now before this court. The second count re-

lated to damages for the right of way taken and is not involved in this appeal.

For clarity and brevity, the pipe line constructed in 1931 will be referred to as the "first line"; the one sought to be constructed in 1941 as the "second line." The plaintiffs will be spoken of as appellants and the defendant as appellee.

In brief, appellants claim that chapter 383.3 violates the Constitution of the State of Iowa and also that of the United States. Also that it permits the taking of public property without compensation; that there is no authority vested in the Iowa Commerce Commission to grant appellee a permit to construct its second line and that the permit issued by it is ineffectual for that purpose; that said chapter does not confer upon appellee the power of eminent domain to secure a second-line right of way and that no statutory authority exists permitting such condemnation; that appellee now has a right of way over which its second line could be constructed and needs no further right of way.

Appellee pleads that it has a statutory right to condemn for the second right of way; that it has complied with all of the requirements imposed and has had issued to it a permit by the Iowa Commerce Commission to construct the second line and condemn, if necessary; that it was unable to purchase from appellants the necessary right of way; that it sought to construct the second line at such a distance from the first line as to lessen the hazard of breaks in the first line with resulting damage and interruption of service. Appellee further pleads that said chapter does not violate any of the constitutional provisions of this state or of the United States.

A short statement concerning the pipe lines and their operations may be helpful in the consideration of the matters now being tried on appeal. The first pipe line constructed is 24 inches in diameter and runs from Texas to Joliet, Illinois, passes through southern Iowa, and is approximately 900 miles in length; conveys natural gas from the gas fields and gathers such gas at its first station at Gray, Oklahoma. There are ten compressor stations along the line, being about 90 miles apart, depending upon natural conditions, topography, and rivers. The gas is forced through the line under pressure of about 720

pounds per square foot and enters the intake of the next compressor station at a pressure of from 560 to 580 pounds per square foot. The first line has a rated capacity of approximately 210,000,000 to 212,000,000 cubic feet of gas per day. About six and one-half per cent of this, or 15,000,000 cubic feet per day is sold to Iowa consumers, gas being distributed in Glenwood, Red Oak, Iowa City, Ottumwa, and other points in Iowa. About ninety per cent of its product is sold in Illinois.

The first line was constructed by a method known as the composite type, certain joints being secured by what are known as "slip joints." This joint is the weakest point and requires for stability solid ground anchorage. If the soil is removed or disturbed a rupture is liable to occur. This first line when constructed was of the most approved type.

The second line is 26 inches in diameter and runs parallel to the first line and except in one or two short spaces is 50 feet from the first line. It is of solid construction, with welded joints, making the joints stronger than the pipe itself. At the time of the trial 380 miles of the second line had been built. It was being built in sections. This second line is independent of the first line but until the whole unit is finished it has various connections and these are known as loops. One of these loops of 84 miles is in part in Mahaska county. Under the formula used, the loops step up the pressure of the whole line, and the evidence shows that when the loops are connected the daily capacity of the line or lines will be increased about 50,000,000 cubic feet.

Appellants, in the inception of their arguments, make the claim that the statutes under which appellee seeks to condemn a right of way for its second pipe line are unconstitutional, insofar as they pertain to them, as being violative of section 1, Article I, section 8, Article I, and section 18, Article I of the Constitution of Iowa, and the Fifth Amendment to the Constitution of the United States.

In order to pass upon this claim of the appellants we shall first consider whether or not the appellants in this case can properly raise such a question. The appellee claims that they cannot. If they cannot, then their claim in this respect should be disregarded.

It is the claim of appellants that chapter 383.3 of the Code, under which the appellee sought to condemn property for its pipe line, is unconstitutional in that it discriminates between operators engaged in interstate business and those engaged in intrastate business.

There is no claim herein that the appellants are engaged in the commerce of transporting gas, either interstate or intrastate; they belong to neither class. Under the almost universal holdings of our courts, to raise the question of discrimination the person raising it must have a direct interest therein. If there is any discrimination permitted or allowed by the provisions of chapter 383.3, the appellants are not in a position, under the record in this case, to raise such issue. The authorities on this proposition are abundant and uniform. In Iowa, this court, in the opinion in Iowa Life Ins. Co. v. Board of Supervisors, 190 Iowa 777, 782, 180 N. W. 721, 722, so decided. We quote:

"The rule is well settled that a litigant may not attack a statute as unconstitutional unless he can show that its enforcement would be an infringement upon his rights. The constitutionality of a statute cannot be questioned by one who is not prejudiced by its enforcement." Citing Brown v. Smart, 145 U. S. 454, 12 S. Ct. 958, 36 L. Ed. 773.

See, also, Walsh v. Columbus, H. V. & A. R. Co., 176 U. S. 469, 20 S. Ct. 393, 44 L. Ed. 548; Boyd v. Johnson, 212 Iowa 1201, 238 N. W. 61.

In 11 Am. Jur. 748, section 111, the rule is stated as follows:

"One of the elementary doctrines of constitutional law, firmly established by the authorities, is that the constitutionality of a legislative act is open to attack only by a person whose rights are affected thereby. Before a law can be assailed by any person on the ground that it is unconstitutional, he must show that he has an interest in the question in that the enforcement of the law would be an infringement of his rights. * * * No one can obtain a decision as to the invalidity of a law on the ground that it impairs the rights of others, for one attacking the constitutionality of a statute is not the champion of any rights except his own."

We hold that appellants, under the record herein, cannot raise the issue that chapter 383.3, Code of 1939, is discriminatory, and we give that matter no further attention.

■ The appellants make the further contention that said chapter permits the taking of *public* property without requiring the payment of compensation therefor. Said chapter does not by its terms give one seeking condemnation the right to condemn highways, waterways, or public grounds. It permits the crossing of said property and upon such terms and in compliance with such safety requirements as are made by the proper authorities so as to protect the safety and welfare of the public in its use of said properties. That chapter grants only the consent to use the highways by crossing under certain terms and conditions and these are precedent to the exercise of such permit to cross.

In support of their claim that said chapter permits the taking of public property without requiring compensation to be paid therefor appellants cite several cases. In argument they place emphasis upon the case of State ex rel. Board v. Stanolind Pipe Line Co., 216 Iowa 436, 249 N. W. 366, 370 [certiorari denied 290 U. S. 684, 54 S. Ct. 120, 78 L. Ed. 589]. There are certain statements in the opinion which appellants claim are decisive. The opinion in that case was rendered on June 30, 1933. It was based upon certain sections of chapter 383-D1 of the Code of 1931. Since that time said chapter has been changed in some particulars and is now in the Code of 1939 as chapter 383.3.

The basis of the action in the Stanolind case was the failure of the Stanolind Pipe Line Company to comply with the provisions of chapter 383-D1 by obtaining a permit to do business in Iowa and by paying certain sums for the privilege of operating in Iowa.

The defendant was a foreign corporation engaged strictly in the interstate business of transporting crude oil through its pipe line from Texas to Whiting, Indiana. Eighteen miles of its line crossed Lee County, Iowa, and in crossing Iowa it used various highways and public grounds. Before constructing its line through Iowa, and while operating the same after construction, no permit was obtained as provided in chapter 383-D1 of the Code of 1931. That chapter required the operator of a pipe

line to first obtain a permit and also required the paying of an annual license fee. Both of these provisions were ignored by the Stanolind Company.

In an extended opinion the court held that the defendant, being engaged in interstate business, could not be required as a condition precedent to secure a permit to cross the state of Iowa. The appellants rely upon certain statements in that case in support of their contention that the crossing of highways and public grounds of Iowa violates the Constitution of Iowa and also that of the United States in that it permits the taking of public property without compensation being paid therefor. In this case the court, in discussing the difference between public and private property, held that in some instances public property might be private property, and stated that there was some question whether or not the taking of said property violated the fundamental law. As we read the decision, the point raised by appellants was not decided. Neither do we think the point was directly involved. On page 443 of 216 Iowa, page 370 of 249 N. W., we said:

"Under this record, it is unnecessary to decide whether the use of the highway for the pipe line in the case at bar constitutes the taking of property under the Fifth Amendment to the Constitution of the United States."

As throwing some light upon said matter, we further quote from said opinion at page 449 of 216 Iowa, page 373 of 249 N. W.:

"Of course, the state may enact reasonable inspection laws and other laws within its police power, which are reasonably designed to, and do, conserve the public safety and health. Accordingly a reasonable license fee may be charged an interstate carrier for the purpose of making legitimate and reasonable inspection. Moreover, the state may charge an interstate carrier for the use of its highways when the state constructed highway is used as a facility of interstate commerce."

It will be noted that following the decision in that case the legislature changed the law and dropped from the Code the various provisions which seem to have been decisive in that case.

In the new enactment the legislature took cognizance of the language used by the court in construing said chapter 383-D1.

█ The appellants make the further claim that appellee is not vested with the power of eminent domain in that there is no statutory authority for issuing a permit for the condemnation of a second right of way for the construction of a loop pipe line; also that the commerce commission had no authority to grant a permit for that purpose, and, without such authority, such right of way for a second or loop pipe line could not be condemned.

The record shows that at the time the first pipe line was constructed there was no authority to condemn for right of way. In the year 1931 the Forty-fourth General Assembly, chapter 191, conferred upon pipe lines the right of eminent domain for right of way. This enactment first appears in the Code of 1931 as section 8338-d23. This enactment reads as follows:

"Eminent domain. Any pipe line company having secured a permit as in this chapter provided shall thereupon be vested with the right of eminent domain to such extent as may be necessary and as prescribed and approved by said board of railroad commissioners, not exceeding seventy-five feet in width for right of way and not exceeding one acre in any one location in addition to right of way for the location of pumps, pressure apparatus or other stations or equipment necessary to the proper operation of its said *pipe line or lines.* If agreement cannot be made with the private owner of lands as to damages caused by the construction of said pipe line the same proceedings shall be taken as provided for taking private property for works of internal improvement." (Italics supplied.)

Here we find a definite grant of such right under certain terms and conditions, and the securing of a permit from the commerce commission is made a condition precedent to such condemnation proceedings. The commission is given broad power in the hearing and the granting of such permits. The commerce commission, in accordance with chapter 383.3, made certain rules and regulations pertaining to the granting of pipe-line permits. These rules are in evidence. Under section 8338.33, Code of 1939, that commission is granted the right to

issue permits upon proper showing of compliance with the rules and regulations laid down by it in such cases. The record in this case shows that appellee complied in all respects with the terms and conditions imposed by the commission, and that, after hearing and notice, the commission issued to the appellee a permit as provided in said section. No irregularity being shown, the issuance of this permit is presumed to be valid. Rule No. 9 [1934] of the commission designates permits issued as "temporary" and "permanent." The reason for the rule is obvious. Exact surveys and data might be required from time to time, depending upon the situation and contingencies arising in the construction and operation of the pipe line.

In regard to the claim of appellants that there exists no authority to condemn for the construction of "loops" in said pipe line, the evidence shows that such loops, as constructed, increase the capacity of the first line, and further, that such loops are but units of the second line, and in time, when completed, will be united into one complete line.

The appellants claim that appellee did not have the right to condemn for a second line because of the fact that at the time of the attempted condemnation it had a pipe line in operation across the state and this had exhausted its rights in such respect. We can see no merit in this claim. Section 8338.46 as quoted (in its original form as section 8338-d23 of Code of 1931) in granting the right of eminent domain, uses the terms "pipe line or lines." To hold, as contended by appellants, in the face of conditions existing at the time the Forty-fourth General Assembly granted such right, would be to say, in effect, that, as applied to appellee, the enactment was an empty promise.

In the construction of a legislative enactment there is to be considered the whole field, the prior legislative action, if any, the end sought to be attained with the view of giving effect to the new or additional legislation. It would be unreasonable to hold that the Forty-fourth General Assembly, in conferring upon pipe-line companies the right to eminent domain, intended to exclude from the provisions of the act a grant of such power to those having pipe lines in operation. When we examine the act, we think it is clear that the legislature had no such intention. See sections 8338.26, 8338.27, Code of 1939; Lewis

on Eminent Domain, 3d Ed., section 403. The use of the term "line or lines" in the statute is significant. As appellee then had a line in operation, it would not be precluded from the grant of the statute. We find nothing in the statute limiting the number of pipe lines a pipe-line company may construct. See Stark v. Sioux City & P. R. Co., 43 Iowa 501; Bennett v. City of Marion, 106 Iowa 628, 76 N. W. 844; Lewis on Eminent Domain, section 393.

In the hearings before a board such as a commerce commission, strictness of proceedings is not required, and such a board is clothed with broad latitude as to matters of procedure. It is not required that such a body proceed with the strict formality of a court of record. It has been held that such proceedings are neither technical nor formal and that a substantial compliance with the statute is sufficient. We hold that in the proceedings before the commerce commission, in which appellee was granted the permit, there was a substantial compliance with the statute. Mohr v. Civil Service Comm., 186 Iowa 240, 172 N. W. 278; Dickey v. Civil Service Comm., 201 Iowa 1135, 205 N. W. 961.

It is true that in considering the power of eminent domain the courts have uniformly held that such power derogatory to private rights is to be strictly construed and is not to be extended or broadened by judicial construction. The power of eminent domain granted to pipe-line companies by chapter 383.3 is broad and general in its terms. It is not for this court to say that the legislature did not have the power to provide for the right of condemnation as provided for in said chapter.

In support of their contention that said chapter did not give the right of condemnation for right of way by pipe-line companies, the appellants have cited a number of cases. We have examined these cases and in our opinion they are not applicable to the situation existing in this case. The case of Strawberry Point D. F. Soc. v. Ball, 189 Iowa 605, 177 N. W. 697, dealt with a private right of way for property where there was no outlet. In Fisher v. Maple Block Coal Co., 171 Iowa 486, 151 N. W. 823, the coal company sought to condemn, and the court, in denying this right, held that the use was only nominally public and should not be granted in that particular instance. In

698

Creston Waterworks Co. v. McGrath, 89 Iowa 502, 56 N. W. 680, the waterworks company sought to 'condemn a right of way for a spur railroad. The trial court granted the right, but on appeal the lower court was reversed. We held in that case that there was a public highway to said waterworks and the railway was not necessary. In Forbes v. Delashmutt, 68 Iowa 164, 26 N. W. 56, it was sought to condemn land for a depot site, and the court held that there was no statutory authority given to secure land for that purpose. To' some extent the matter of pleadings was involved.

 The appellants claim that, as appellee had a pipe line in operation at the time it sought condemnation for the second pipe line, it had therefore exhausted its power to condemn. We are of the opinion that, under the enabling statute and a reasonable interpretation thereof, having in operation a first pipe line would not preclude the appellee from a further exercise of the power to condemn. In Stark v. Sioux City & P. R. Co., 43 Iowa 501, the railroad company sought to condemn additional ground to be used by it for railway purposes. It was claimed by the owner of the land sought to be taken that, as the railroad was then operating and had land for its right of way, the taking of further land was unnecessary. Under the statute then in force a railroad company could condemn for a right of way limited to 100 feet. The court upheld the claim of the railroad company that the additional ground sought was necessary.

In Bennett v. City of Marion, 106 Iowa 628, 76 N. W. 844, the court, in speaking of the necessity of the taking of real estate by condemnation, held that it was difficult in many cases for a court to determine whether all of the property sought to be condemned was necessary, and added that the opportunity of the corporation to judge of its needs must be taken into consideration. This case cites the Stark case. However, in the case of Havner v. Iowa State Highway Comm., 230 Iowa 1069, 300 N. W. 287, this court held that the question of the necessity of taking real estate by the highway commission was a matter subject to review by the courts. In that case it upheld the lower court in holding that no sufficient necessity was shown to exist. •

 The holdings of the court as set forth in the preceding

paragraph are applicable to the claim which appellants make that the additional land sought by the pipe-line company is unnecessary and that both pipe lines can be laid upon the original right of way.

Section 8338.22 declares that one of the purposes of the act was to give the commerce commission power and authority to supervise the transportation of natural gas in such a way as to protect the safety and welfare of the public. It will be noted that the legislative enactment places stress upon the public safety and welfare. The enactment gives the commission the power and authority to supervise, examine, and inspect the construction of such lines, their maintenance and condition. It would seem illogical to assume that the commission would permit the construction of a pipe line carrying an inflammable product so near another line carrying the same product that the hazards already existing would be increased. The record in this case reveals that there have been several breaks in the first line. Engineers have given testimony that if the pipe lines were closer than 50 feet both lines would be affected from breaks in either. There was evidence that there had been a break in the line near Red Oak, Iowa, in 1939, and that in this break a large crater was made, and the head engineer gave it as his opinion that had another line been then in operation closer than 50 feet there would likely have been a rupture in the second line. A break in a pipe line not only creates a fire hazard but also results in the interruption of vital service and considerable delay and expense. The records show that a break in the line in 1938, near Sheffield, Illinois, cost the appellee approximately $250,000.

The evidence in this case shows that in the construction of a pipe line heavy machinery is used, and that, due to soil conditions, these machines at times sink into the ground to a depth of as much as two feet, and this, with the weight of such machinery, might cut into and interfere with the operation of the first line if the construction work were carried on within 50 feet.

The appellee considered the asked-for 75 feet as necessary from a standpoint of safety and efficiency; the commerce commission held likewise; and the able trial judge who heard the evidence was of the same opinion. In the face of this record in this case we find that the court had ample evidence to sustain

its findings. As throwing light upon the situation, we cite the following cases: Minear v. Plowman, 197 Iowa 1188, 197 N. W. 67; Dubuque & Sioux City R. Co. v. Fort Dodge, D. M. & S. R. Co., 146 Iowa 666, 125 N. W. 672; Barrett v. Kemp, 91 Iowa 296, 59 N. W. 76; 18 Am. Jur. 735, 736, sections 108, 109.

The appellee is engaged in interstate commerce. This was held in the case of Federal Power Comm. v. Natural Gas Pipeline Co., 315 U. S. 575, 62 S. Ct. 736, 86 L. Ed. 1037. Its eastern terminus is Joliet, Illinois. About ninety per cent of its product is there sold to the Peoples Gas, Light & Coke Company, which company in turn sells to the people of Chicago and various industries in or near that city. Among the industries served are the Carnegie Steel Company, the Republic Steel Company, International Harvester Company, Swift & Company, the Crane Company, and some others.

The appellee makes the claim herein that this court should not, in good conscience, while exercising its sound discretion, grant appellants the relief sought by way of a mandatory injunction and thereby compel it to remove its pipe line. In view of the conclusion already reached herein, in which we find adversely to the claim of the appellants, we will refer but briefly to the point raised by the appellee in Division V of its brief and argument. In passing, we might suggest that the issues raised by appellants in their substituted petitions could very properly have been raised months before and when appellee was much farther away from the land sought to be condemned. The issues herein on pleading and motion of appellants are in a court of equity, and this court is petitioned to compel the removal of an improvement which now is in operation and is supplying a fuel vital to homes and industries. This line is close to another line now used for the same purpose. Appellants have pending an action at law wherein the damages for the land taken can be adjudicated. There is a presumption that in the trial of such issue adequate damages for the property taken will be awarded. There is a rule in equity that where damages sustained can be admeasured and compensated equity will not interfere where the public benefit greatly outweighs private and individual inconvenience. Daniels v. Keokuk Water Works, 61 Iowa 549, 16 N. W. 705; Casteel.v. Town of Afton, 227 Iowa 61, 287 N. W. 245.

It is ordered that the decrees of the lower court in each of the cases submitted wherein the court found in favor of the appellee should be, and same are, affirmed.—Affirmed.

All JUSTICES concur.