**VIETNAM VETERANS AGAINST THE WAR and Larry Duncan, Appellees,**

v.

**VETERANS MEMORIAL AUDITORIUM COMMISSION et al., Appellants,**

*City of Des Moines, Iowa, Appellant.*

No. 55645.

Supreme Court of Iowa.

Oct. 17, 1973.
Rehearing Denied Dec. 13, 1973.

William D. Groteluschen, City Sol., Des Moines, for appellant City of Des Moines, and James P. Irish, Altoona, for remaining appellants.

William L. Kutmus and Gordon E. Allen, Des Moines, for appellees.

MOORE, Chief Justice.

As authorized by Code chapter 37, the citizens of the City of Des Moines by vote approved construction of the Veterans Auditorium. City bonds were issued to pay the costs thereof. It was built and for many years has been operated entirely as a City of Des Moines project. Each named defendant commissioner is a resident of Des Moines.

Plaintiff's action contests the constitutionality of section 37.10 which provides:

"Each such commissioner shall be an honorably discharged soldier, sailor, or marine of the United States, selected in the following manner:

"Within sixty days after the election, each post of the Grand Army of the Republic, Spanish-American War Veterans, Veterans of World War I, and the American Legion, Disabled American Veterans of the World War, Veterans of Foreign Wars of the United States, Marine Corps League and American Veterans of World War II (AMVETS) in the county, city, or town, as the case may be, shall appoint three delegates who shall, within ninety days after such election, meet in convention in the county, city, or town, as the case may be, and by ballot select five commissioners, whose names shall be forthwith furnished to the board of supervisors, or the city or town council, as the case may be, whereupon said board of supervisors or city or town council shall by resolution appoint them as such commissioners."

Defendants and intervenor, City of Des Moines in addition to denying the allegations of plaintiffs' petition denied plaintiffs' standing to maintain this action.

The trial court held Code section 37.10 unconstitutional, the defendant commissioners had been elected by an unconstitutional method and that at the next regularly scheduled election to select commissioners all veterans of service in the United States Armed Forces were entitled to vote. In other words whether honorably or dishonorably discharged all veterans regardless of place of residence were given the right to participate.

On this appeal defendants and intervenor assign five propositions for reversal. First they assert the trial court erred in not holding plaintiffs lacked standing to maintain the action. The other four attack the court's adverse ruling on constitutionality of section 37.10 and its orders concerning future elections.

As we point out infra our holding on the first assigned proposition is decisive of this appeal.

Plaintiff, Vietnam Veterans Against the War, is apparently incorporated in some other state but certainly not in Iowa. It has no permit to do business in this state. Its headquarters are in New York. It has no established posts or local organizations in Iowa. There is an entire lack of evidence that any member of the organization is a resident of Des Moines. Not one is named in the record.

Larry Duncan testified: "I am the plaintiff in this cause of action. I am twenty-six years old, I live at 2000 Grand Avenue, West Des Moines, Iowa and have lived in West Des Moines since 1967." That incorporated city is no part of the City of Des Moines.

■ ᐧ It is well established that the constitutionality of a statute may not be attacked by one whose rights are not, or are not about to be, adversely affected by the operation of the statute. A showing only of such interest in the subject as the public generally has is not sufficient to warrant the exercise of judicial power to determine the constitutionality of a statute. Lee Enterprises, Inc. v. Iowa State Tax Com'n, Iowa, 162 N.W.2d 730, 740; Kruck v. Needles, 259 Iowa 470, 479, 144 N.W.2d 296, 302; Lewis Consolidated Sch. Dist. v. Johnston, 256 Iowa 236, 242, 127 N.W.2d 118, 122, 123; Diamond Auto Sales, Inc. v. Erbe, 251 Iowa 1330, 1334, 105 N.W.2d 650, 652; Browneller v. Natural Gas Pipeline Co., 233 Iowa 686, 692, 8 N.W.2d 474, 477 and citations.

The general rule is thus stated in 16 Am. Jur.2d Constitutional Law, section 119, pages 310–312:

"It is always open to interested persons to show that the legislature has transgressed the limits of its power, and persons injuriously affected may question the validity of a law. But the requirements of interest and injury are important ones. A constitutional question does not arise merely because it is raised and a decision thereof sought. The constitutionality of a legislative act is open to attack only by a person whose rights are affected thereby. Before a law can be assailed by any person on the ground that it is unconstitutional, he must show that he has an interest in the question in that the enforcement of the law would be an infringement on his rights. Assailants must therefore show applicability of the statute and that they are thereby injuriously affected. These rules are applicable to all cases both at law and in equity. * * *.

"The corollary to the general rule is that one who is not prejudiced by the enforcement of an act of the legislature cannot question its constitutionality." See also 16 C.J.S. Constitutional Law § 76.

The Supreme Court has consistently recognized and applied the general rule. Two of its recent cases are Laird v. Tatum, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154; Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830, 1973.

In Broadrick the court says, " * * *, the statement of Mr. Justice Holmes is particularly appropriate: 'if there is any difficulty . . . it will be time enough to consider it when raised by someone whom it concerns.' United States v. Wurzback, *supra,* 280 U.S. [396], at 399 [50 S.Ct. 167, 74 L.Ed. 508]."

In Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636, the Supreme Court held where plaintiff Club failed to establish it or its members would suffer injury by enforcement of an Administrative Procedure Act it lacked standing to maintain an action attacking the Act.

■ Under the record the trial court should have held plaintiffs failed to establish standing to challenge the constitutionality of Code section 37.10. The burden was on them to do so. Knorr v. Beardsley, 240 Iowa 828, 839, 38 N.W.2d 236, 242, 243 and citations.

Without reaching the last four assigned propositions we hold plaintiffs lack standing to maintain this action.

The judgment and decree of the lower court is reversed. This case is remanded for dismissal by the trial court.

MASON, RAWLINGS, LeGRAND, REES and HARRIS, JJ., concur.

McCORMICK, UHLENHOPP and REYNOLDSON, JJ., dissent.

McCORMICK, Justice (dissenting).

I respectfully dissent because I believe plaintiffs established their standing and the unconstitutionality of the procedure in Code § 37.10 for selection of auditorium commissioners.

I. *Standing.* I believe there is ample proof in the record of plaintiffs' standing. The gist of the majority opinion appears to be that plaintiffs lack standing because they are not property taxpayers in Des Moines. That narrow view misconceives the law of standing and the theory of standing on which plaintiffs rely.

Standing is a rule of practice, not a matter of substantive law. Where federal questions are involved, as in this case, we have tailored our rule to that observed in federal courts. Gradischnig v. Polk County, 164 N.W.2d 104, 107 (Iowa 1969). The test is whether plaintiffs have alleged "such a personal stake in the outcome of the controversy" as to insure the dispute sought to be adjudicated will be presented in a concrete adversary context. Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663, 678 (1962). It is not necessary to decide whether their allegations will entitle them to any relief, only whether if the wrong alleged "does produce a legally cognizable injury, they are among those who have sustained it." *Id.*, 369 U.S. at 208, 82 S.Ct. at 705, 7 L.Ed.2d at 680. If so, they are entitled to their day in court. The substantive issues are examined only "[to determine whether there is a] logical nexus between the status asserted and the claim sought to be adjudicated" and "the necessary degree of contentiousness." Roe v. Wade, 410 U.S. 113, 124, 93 S.Ct. 705, 712, 35 L.Ed.2d 147, 161 (1973); see Flat v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L. Ed.2d 947 (1968); Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). Recent United States Supreme Court decisions "have greatly expanded the types of 'personal stake[s]' which are capable of conferring standing on a potential plaintiff." Linda R. S. v. Richard D., 410 U.S. 614, 616, 93 S.Ct. 1146, 1148, 35 L. Ed.2d 536, 540 (1973); cf. Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L. Ed.2d 636 (1972) (rule inapplicable where standing is statutory).

Where fundamental rights are involved, courts will proceed "without blind adherence to technical rules of representation" and standing will be liberally accorded. Smith v. Board of Education of Morrilton Sch. Dist. No. 32, 365 F.2d 770, 776–778 (8 Cir. 1966). Such fundamental rights include first amendment freedoms, National Student Association v. Hershey, 134 U.S. App.D.C. 56, 412 F.2d 1103 (1969), and voting rights, Colegrove v. Green, 328 U.S. 549, 66 S.Ct. 1198, 90 L.Ed. 1432 (1946); Gradischnig v. Polk County, supra.

In the present case, Vietnam Veterans Against the War challenges Code § 37.10 in its own behalf and that of its members. It may do so. NAACP v. Button, 371 U.S. 415, 428, 83 S.Ct. 328, 335, 9 L.Ed.2d 405, 415 (1963). In so doing it alleges injury to all veterans, including plaintiff Larry Duncan, who are denied the right to participate in the selection of auditorium commissioners because they do not belong to veterans' posts which choose the commissioners. Plaintiff Duncan alleges the same injury in his own behalf and in his representative capacity.

In such capacities, plaintiffs attack the statute on three fundamental constitutional bases: (1) as violative of freedom of speech and association under the first amendment to the United States Constitution, (2) as an improper delegation of governmental power under the Iowa Constitution, and (3) as a denial of equal protection of the laws under the fourteenth amendment to the United States Constitution.

Of course, if either plaintiff has standing, the issues raised in their petition must be decided.

There is no problem finding the necessary degree of contentiousness in this case. Cf. Golden v. Zwickler, supra. The issue here is whether there is a logical nexus between the status asserted and the claims sought to be adjudicated showing either plaintiff has a sufficient personal stake in the outcome of the controversy.

The majority opinion omits any reference to several facts in the record which refute its central assumptions.

Plaintiff Vietnam Veterans Against the War is a national organization with 200,000 members. Its officers include national, state and local coordinators. Two Des Moines area coordinators, including plaintiff Duncan, report to the Iowa coordinator who in turn answers to a regional coordinator in Madison, Wisconsin. The only prerequisite to membership is service in the United States armed forces in the Indo-China area during the Vietnam War. There are about 200 members in Iowa, including about two dozen in Polk County. The Des Moines area unit includes Polk County and the City of Des Moines. Dues are assessed and paid for lifetime membership. Meetings are held as necessary to meet the needs and purposes of the organization. Such needs and purposes as of the time of trial primarily concerned action to speed the end of the war and assist returning veterans. Local meetings are held in members' homes.

Plaintiff Larry Duncan exercises control over the group's activities in an area including the City of Des Moines. The group maintained an informational and fund-raising booth at the 1971 state fair in Des Moines. The parties stipulated Duncan is eligible for membership in the American Legion or Veterans of Foreign Wars. He is opposed to their positions on some issues and is unwilling to join either organization. On cross-examination he acknowledged if he were a member of such organizations he would be able to participate in the selection of delegates to the convention which selects auditorium commissioners.

Defendants and intervenor maintained as their principal theory of defense that Duncan should not complain of disfranchisement under § 37.10, not because of lack of standing, but because he could have obtained the franchise by joining either the designated American Legion or Veterans of Foreign Wars posts. This points up the logical contradiction in the majority position: although it is willing to assume *no* member of Vietnam Veterans Against the War is a resident of the City of Des Moines, despite the geographical base of the local chapter and the fact there are two dozen members in Polk County, it is willing to assume, without any requirement in the statute or basis in the record, that *all* members of the franchised veterans' posts are residents of the city. This assumption belies the record and the theory of defense.

In fact, the record is barren of *any* evidence to show the organizations franchised under § 37.10 differ from Vietnam Veterans Against the War either as to structure, membership, or function. The record does affirmatively reveal that all, including plaintiff organization, are veterans' groups operating in the City of Des Moines.

Where, as here, a plaintiff shows membership in the class whose other members are favored under a statute, such plaintiff has standing to challenge discrimination under that statute. See American Civil Liberties Union of Virginia, Inc. v. Radford College, 315 F.Supp. 893 (W.D.Va. 1970); 16 C.J.S. Constitutional Law § 88. In seeking to vindicate its right and that of its members to participate in the selection of auditorium commissioners, Vietnam Veterans Against the War asserts a plain, direct, and adequate stake in the outcome of the controversy. Baker v. Carr, supra, 369 U.S. at 208, 82 S.Ct. at 705, 7 L.Ed.2d at 680.

The majority confuses its notion only residents of Des Moines *should* be able to participate in selection of auditorium commissioners, a question on the merits, with what the statute presently permits. No such limitation appears in the statute. The controversy exists because of what the statute *does* permit, not what is *should* permit, and the action is brought to obtain an adjudication as to the constitutionality of what it *does* permit.

As coordinator of the Des Moines activities of the group, if not as a member, Larry Duncan similarly proved a logical nexus between his status and his claims. In addition, if, as acknowledged by defendants, he is eligible as an honorably discharged veteran of the Vietnam War to receive the benefit of § 37.10 by joining one of the listed groups, but only by doing so, and, as he maintains, is denied fundamental constitutional rights through exercise of his right not to join such groups, he also has standing to litigate his contentions in his individual capacity. That is, if § 37.10 infringes the constitutional rights alleged, he is among those who have sustained injury. See Baker v. Carr, supra.

I would hold both plaintiffs have standing to challenge the selection procedure.

II. *Constitutionality of § 37.10.* Although the majority chooses not to face the merits of this controversy, I believe they should be confronted and answered. Trial court's conclusion as to the unconstitutionality of the selection procedure in § 37.10 should be sustained on two grounds alleged, that it constitutes an improper delegation of governmental power and that it denies persons similarly situated equal protection of the laws.

A. *Delegation of governmental power.* Even though Code § 37.10 requires a resolution by the appropriate governing body "appointing" the auditorium commissioners, it mandates investiture of those persons selected by delegates of the designated veterans' organizations.

It is similar to the scheme in Ashmore v. Greater Greenville Sewer Dist., 211 S.C. 77, 44 S.E.2d 88 (1947) involving a statute designating representatives selected by the Lions, Kiwanis, Rotary, Exchange, Altrusa, and Optimist Clubs, American Legion, Trades and Labor Council, and Chamber of Commerce as members of a board of trustees to control and manage a public auditorium. The court observed, "Such delegation by the lawmaking body to persons, groups or organizations unrelated to government of power to appoint or elect public officers constitutes a difficult and important problem of constitutional law which has vexed the courts and textwriters." *Id.,* 44 S.E.2d at 95. After noting a split of authority in jurisdictions where the question had been raised, the South Carolina court held the statute violated its state constitutional equal protection and due process clauses "for such lack of substantial and rational relation between the appointive or elective power and the function of government which the appointees or electees are to perform." *Id.,* 44 S.E.2d at 96.

A stricter rule was adopted by the Massachusetts court in Opinion of the Justices, 337 Mass. 777, 150 N.E.2d 693 (1958), involving a statute creating an unpaid special commission to expend public funds in preparation for a civil war centennial. Sixteen of its 25 members were to be elected by named unofficial and voluntary organizations, including veterans' groups. The court held, "[I]t would not be proper to authorize the selection of persons to expend public funds by organizations or groups not themselves public bodies or made up of public officers," noting, "It may be otherwise where there is no more than a power of nomination in a private organization." *Id.,* 150 N.E.2d at 698. The court reasoned that even though the groups contained well-qualified individuals, "[E]ach individual is accountable solely to his own respective organization and has no connection with any branch of government in which the sovereign power is lodged by our Constitution." *Id.,* 150 N.E.2d at 698. The statute was held unconstitutional.

A similar result was reached for the same reason in State v. Schorr, 6 Terry 18, 45 Del. 18, 65 A.2d 810 (1948), where a statute delegated to political party chairmen the authority to name members of a statutory elections department. The court held the delegation of authority violated the concept that government may not transfer sovereignty to private persons.

The basis for this concept is that government derives its sovereignty from the

people. All governmental power not reserved by the people is vested in the three branches. This leaves no discretion in any branch of government to distribute governmental power outside of those three branches.

As stated in Tucker v. State, 218 Ind. 614, 697–698, 35 N.E.2d 270, 302 (1941):

"The appointment to office is universally held to be an exercise of the sovereign power. * * * If the Legislature should attempt to invest the State Dental Association with power to appoint members of the State Highway Commission, the courts could not hold the statute unconstitutional because in their judgment it would have been wiser to vest that power in an association of highway engineers. Such an enactment could only be stricken down upon the ground that the Legislature had no constitutional power to vest a governmental function elsewhere than in one of the three departments of the government created by the people in their Constitution."

The propriety of delegation of state sovereignty is a matter of state constitutional law. Iron Workers Local No. 67 v. Hart, 191 N.W.2d 758, 772 (Iowa 1971); cf. Note, 58 Iowa L.Rev. 974 (1973). Section 2, Article I, of the Iowa Constitution provides, "All political power is inherent in the people. Government is instituted for the protection, security, and benefit of the people * * *." Section 1, Article III, enunciates the distribution and separation of governmental power: "The powers of the government of Iowa shall be divided into three separate departments—the Legislative, the Executive, and the Judicial * * *."

I believe we should adopt the rule recognized by Massachusetts, Delaware and Indiana under similar constitutional provisions. Sovereignty given by Iowans to their government cannot be relinquished to private persons or groups. This includes the power to select public officers as distinguished from mere power to advise or recommend. Public officers must be responsible to public rather than private interests. Code § 37.10 violates this principle by effectively vesting the power to select public auditorium commissioners in private veterans' groups. It puts control of the selection of public officers in private persons and groups instead of in a public appointing authority or the electorate. It is unconstitutional under Section 1, Article III of our Constitution.

B. *Equal protection.* I also agree with the contention urged by plaintiffs in the trial court that the selection procedure of Code § 37.10 violates the Equal Protection Clause of Amendment 14, United States Constitution. The selection procedure of § 37.10 is unlike that upheld in the face of constitutional attack in Sailors v. Kent Board of Education, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967). The court there sustained the right of the legislature to make administrative positions appointive rather than elective and held where delegates from elected local school boards selected members of the county school board, the scheme was basically appointive and immune from equal protection attack.

Engagement in protracted semantic analysis to determine whether the procedure under § 37.10 is "elective" or "appointive" within traditional application of those terms is unnecessary. See, e. g., Wickersham v. Brittan, 93 Cal. 34, 28 P. 792 (1892) for discussion of their usual meaning. The grant of power of selection in the present case to private groups and persons rather than to a public officer or body removes it from the rule of *Sailors* and brings it within the rule of Kramer v. Union Free School District No. 15, 395 U. S. 621, 629, 89 S.Ct. 1886, 1890–1891, 23 L. Ed.2d 583, 590–591 (1969):

"States do have latitude in determining whether certain public officials shall be selected by election or chosen by appointment * * *. However, 'once the franchise is granted to the electorate, lines may not be drawn which are incon-

sistent with the Equal Protection Clause of the Fourteenth Amendment.' [citation]"

Although the franchise in this case is granted to an extremely limited group, refusal to apply the *Kramer* rule here would mean legislatures could always avoid the equal protection standard by increasing discrimination to exclude all but an elite handful of citizens from the selection process.

In *Kramer* residents who did not own or lease taxable property in the district or have children enrolled in the public schools were disfranchised from school board elections. The court held the statute denied equal protection to the excluded classes. If the *Sailors* rule were applicable, this holding could be avoided by enlarging the exclusion so that, for example, residents who did not belong to the local Rotary Club were also excluded. Equal protection would not thereby be made inapplicable. It is a qualitative rather than quantitative standard. The *Sailors* rule presupposes appointment by a properly constituted governmental officer or body.

The present case is fully subject to the rationale of *Kramer:*

" * * * Our exacting examination is * * * required because some resident citizens are permitted to participate and some are not. For example, a city charter might well provide that the elected city council appoint a mayor who would have broad administrative powers. *Assuming the council were elected consistent with the commands of the Equal Protection Clause,* the delegation of power to the mayor would not call for this Court's exacting review. On the other hand, if the city charter made the office of mayor subject to an election in which only some resident citizens were entitled to vote, there would be presented a situation calling for our close review." Kramer v̇. Union Free School District No. 15, supra.. (Italics added.)

This case is subject to the *Kramer* rule because some members of the general public have been permitted to select commissioners to the exclusion of others.

Section 37.10 must therefore be tested by the equal protection standard. Several principles and considerations are involved:

" 'In determining whether or not a state law violates the Equal Protection Clause, we must consider the facts and circumstances behind the law, the interests which the State claims to be protecting, and the interests of those who are disadvantaged by the classification.' [citation] And in this case we must give the statute a close and exacting examination. * * * This careful examination is necessary because statutes distributing the franchise constitute the foundation of our representative society. Any unjustified discrimination in determining who may participate in political affairs or in the selection of public officials undermines the legitimacy of representative government." Kramer v. Union Free School District No. 15, 395 U.S. at 626, 89 S.Ct. at 1889, 23 L.Ed.2d at 589.

In addition, when reviewing statutes in which the legislature has given the right to vote to some residents but denied it to others, "the general presumption of constitutionality afforded state statutes and the traditional approval given state classifications if the Court can conceive of a 'rational basis' for the distinctions made are not applicable." Kramer v. Union Free School District No. 15, supra, 395 U.S. at 627–628, 89 S.Ct. at 1890, 23 L.Ed.2d at 590. Under Code § 37.10 the right to vote for auditorium commissioners is given to certain veterans' organizations, but is denied: (1) to at least one other veterans' organization in the city, (2) to veterans who reside in the city but do not belong to one of the designated organizations, and (3) to citizens of the city generally. The presumption of constitutionality and rational basis test are therefore inapplicable here.

In giving § 37.10 the requisite close scrutiny the task is to "determine whether the exclusions are necessary to promote a compelling state interest." Kramer v. Union Free School District No. 15, supra, 395 U. S. at 627, 89 S.Ct. at 1890, 23 L.Ed.2d at 589. See also Rosario v. Rockefeller, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973); Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972).

Defendants and intervenor point to the efficiency of the selection procedure and allege elections open to other voters would be cumbersome.

This argument falls far short of demonstrating a compelling state interest for disfranchising most of the community from the process to choose public officers to spend public funds in construction and management of a public facility. If sufficient to establish a basis for limiting the franchise in this case, the same reasoning would support limitation of the franchise in every case. Discipline and efficiency are not marks of the democratic process. I am unaware of any case in which such factors have been recognized as justifying a limitation of suffrage. Nor should they be.

Defendants have failed to show any compelling state interest to permit limitation of the franchise to select the public officers in this case to certain named veterans' organizations.

Analogous cases support this conclusion. See Dunn v. Blumstein, supra (disfranchisement based on duration of residence); City of Phoenix v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970) (non-property owners disfranchised in bond elections); Evans v. Cornman, 398 U.S. 419, 90 S.Ct. 1752, 26 L.Ed.2d 370 (1970) (residents at federal facility disfranchised from voting in state elections); Kramer v. Union Free School District No. 15, supra (residents who did not own or lease taxable property in the district or have children enrolled in the schools disfranchised from school board elections);

Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965) (servicemen who moved to Texas disfranchised from voting in Texas so long as they remained in service).

I would hold the selection procedure of Code § 37.10 violates the Equal Protection Clause.

III. *The remedy.* Trial court's decree declares the entirety of § 37.10 unconstitutional. In so doing I believe it is too broad. That portion of § 37.10 which establishes qualifications of commissioners is not affected by the unconstitutionality of the selection procedure. It is severable from the remainder of the section. § 4.12, The Code. Accordingly the provision of § 37.10 which requires that each commissioner shall be an honorably discharged soldier, sailor, or marine of the United States can remain intact and fully applicable.

In addition, trial court's ruling prescribes a new procedure for selection of commissioners wherein all veterans would be eligible to vote. The unconstitutionality of the present procedure in § 37.10 does not necessitate or permit judicial substitution of a different scheme.

It is clear the commission elected under § 37.10 is an administrative rather than legislative body. There is no constitutional requirement that its members be elected rather than appointed. See Sailors v. Kent Bd. of Education, supra. Hence, unlike the situation in such cases as Forst v. City of Sioux City, 209 N.W.2d 5 (Iowa 1973), this case does not involve a constitutional right requiring and permitting affirmative judicial implementation.

The result is the selection procedure of § 37.10 should fall in its entirety without judicial substitution of an alternative selection scheme. The legislature would be free to provide that the positions be filled by appointment by the appropriate public officer or body. If it prefers election of commissioners, the procedure is a matter for legislative determination within constitutional limits.

Unless or until a change in the statute the positions could be filled by appointment by the city council. The selection procedure of § 37.10 is obviously severable from the remaining provisions of the statute. § 4.12, The Code. The legislature provided for appointment of commissioners by the board of supervisors, or the city or town council (depending on whether the building or monument is a county, city or town structure) where the selection procedure of § 37.10 might fail. See §§ 37.13, 37.14, The Code. Those sections would remain fully operative. In the present case all commission positions would be declared vacant, but the city council of Des Moines could appoint successor commissioners pursuant to § 37.14. They would be required to have the qualifications specified in § 37.10.

My dissent is therefore predicated on my disagreement with the majority conclusion on the issue of standing and my view that trial court's decree should be affirmed in its holding the selection procedure in § 37.-10 is unconstitutional, but vacated to the extent it orders a new selection procedure.

UHLENHOPP and REYNOLDSON, JJ., join in this dissent.